**K–MART CORPORATION,**
Defendant–Appellant,

v.

**Joseph NOVAK, as Husband of Margaret M. Novak, and as Administrator of the Estate of Margaret M. Novak, Plaintiff–Appellee.**

No. 93A02–8708–EX–330.

Court of Appeals of Indiana,
First District.

April 27, 1988.

Rehearing Denied June 8, 1988.

Douglas F. Stevenson, Stevenson, Rusin & Friedman, Ltd., Chicago, for defendant-appellant.

Terrence M. Rubino, Hammond, for plaintiff-appellee.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

K–Mart Corporation (K–Mart) appeals from the Industrial Board of Indiana's (Board) award of workmen's compensation death benefits to Joseph Novak, husband and widower of Margaret Novak, deceased employee. We affirm in part, reverse in part, and remand with instructions.

## FACTS

On May 28, 1985, around 6:00 P.M. James Koslow engaged in a maniacal shooting spree in St. John, Indiana. Koslow's shooting spree began on the eastside of U.S. Highway 41 and crossed to the west side of the highway into a K–Mart parking lot and ended inside the store. During the shooting spree Koslow shot and killed three (3) persons and wounded five (5) others. Margaret Novak was one of the persons killed. Margaret was employed by K–Mart as a clerk and was working at her station in the store at the time of her death. Margaret was the wife of Joseph Novak.

On May 31, 1985, K–Mart wrote to Joseph as follows:

"Pursuant to the Indiana Worker's Disability Compensation Statute, you are entitled to reasonable expenses of burial in the amount not to exceed $5,000."

Record at 10. Thereafter, K–Mart paid Joseph Two Thousand Dollars ($2,000) for burial expenses. Joseph received another letter from K–Mart which stated in part as follows:

"Please be advised that at this time we do not agree that Mr. Novak is a presumptive dependent."

On August 8, 1985, Joseph filed an application for compensation with the Board. K–Mart responded and argued among other things that Margaret's death did not "arise out of" her employment. On February 20, 1987, the Full Industrial Board found that Margaret's death was an accident which arose out of and in the course of her employment and awarded death benefit compensation to Joseph who was found to be a presumptive dependent. The Board found further that K–Mart was estopped by its representations from denying applicability of the Workmen's Compensation act and from challenging Joseph's right to recovery. K–Mart appeals the Board's findings and award.

## ISSUES

Six (6) issues have been presented for review:

1. Whether the Board improperly determined that Margaret's death arose out of her employment?

2. Whether the Victims of Violent Crimes Compensation Act, Indiana Code sections 16–7–3.6–1 et seq. supersedes and prohibits recovery under the Workmen's Compensation Act, Indiana Code sections 22–3–2–1 et seq.?

3. Whether the decision of *Portman v. Steveco* (1983), Ind. App., 453 N.E.2d 284, should be overturned to the extent that presumptive dependency is applied to husbands?

4. Whether the Board determined improperly that K–Mart was estopped from denying applicability of the Workmen's Compensation Act and from raising defenses other than Joseph's status as a presumptive dependent?

5. Whether the Board erred by decreeing a lump sum payment?

6. Whether this court should assess attorney's fees and damages against K–Mart for challenging compensation and for filing an appeal without merit?

## DISCUSSION AND DECISION

In challenging an award of compensation by the Board, K–Mart confronts a strong standard of review. This court will not disturb the Board's findings unless the evidence is undisputed and leads unerringly to a contrary result. *Sears Roebuck and Co. v. Murphy* (1987), Ind.App., 508 N.E.2d 825, 829 (transfer pending); *Blaw–Knox Foundry and Mill Machinery, Inc. v. Dacus* (1987), Ind.App., 505 N.E.2d 101, 102; *Burger Chef Systems, Inc. v. Wilson* (1970), 147 Ind.App. 556, 558, 262 N.E.2d 660, 662. This court neither reweighs the evidence nor judges witness credibility as these are functions of the Board. *Sears*, at 829; *Dacus*, at 102; *Wilson*, 147 Ind.App. at 558, 262 N.E.2d at 662. This court must disregard all unfavorable evidence, and must examine only that evidence and the reasonable inferences that can be drawn therefrom which support the Board's findings and decision. *Sears*, at 829; *Dacus*, at 102.

### Issue One

K–Mart argues first that the Board erred by determining that Margaret's death "arose out of" her employment as required by Indiana's Workmen's Compensation Act. Specifically, K–Mart argues that an accident does not "arise out of" the employment unless the employment is shown to involve a risk that is uncommon to the public, and peculiar to the employment. K–Mart suggests additionally that the risk of being shot by a lunatic was a risk common to the public and did not "arise out of" Margaret's employment. Thus, K–Mart argues the Board improperly awarded compensation.

K–Mart correctly points out that the person seeking the benefit of the Act carries the burden of proving its applicability. *Lona v. Sosa* (1981), Ind.App., 420 N.E.2d 890, 894, *trans. denied; Wilson*, 147 Ind. App. at 559, 262 N.E.2d at 662; *Stanley v. Riggs Equipment Co.* (1961), 133 Ind.App. 86, 90, 178 N.E.2d 766, 768. To recover under the Act a claimant must establish that an injury occurred "by accident arising out of and in the course of employment". Ind. Code § 22–3–2–5; *Evans v. Yankee-town Dock Corp.* (1986), Ind., 491 N.E.2d 969, 973. This court construes these terms of the Act liberally and in favor of the employee so that the humane purposes of the Act will not be defeated. *Evans*, at 971. K–Mart recognizes that "arising out of", and "in the course of" are two separate elements, and only challenges the Board's determination as to the "arising out of" element. The "in the course of" element, which refers to the time, place, and circumstances of the accident, is unchallenged and clearly was established.

The "arising out of" element is referred to as the causal connection between the accident and the employment. An accident "arises out of" the employment when a causal relationship exists between the injury and the employment. *Evans*, at 975; *Murphy*, at 830. The causal connection is established by showing that a rational mind might comprehend that the accident was a risk incidental to the employment. *Dacus*, at 102. However, the risk need not be expected or foreseeable to be incidental to the employment. *Id.* at 102–03. The determination of whether the accidental risk was an incident of employment is fact sensitive, and accordingly, is entrusted to the Board. *Murphy*, at 829; *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, 736, *trans. denied.*

As a general rule, under Indiana law a risk is incidental to the employment if the risk involved is not one to which the public at large is subjected. *E.I. DuPont De-Nemours v. Lilly* (1948), 226 Ind. 267, 272, 79 N.E.2d 387, 389; *Segally v. Ancerys* (1985), Ind.App., 486 N.E.2d 578, 581; *Lincoln v. Whirlpool Corp.* (1972), 151 Ind. App. 190, 196, 279 N.E.2d 596, 599–600; *Citizens' Independent Telephone Co. v. Davis* (1950), 121 Ind.App. 20, 25, 94 N.E. 2d 495, 498, *trans. denied* 229 Ind. 217, 97 N.E.2d 490. This general rule is referred to as the "increased risk" test. *Olinger Const. Co. v. Mosbey* (1981), Ind.App., 427 N.E.2d 910, 913, *trans. denied; Lincoln*, 151 Ind.App. at 196, 279 N.E.2d at 599. Our courts do not always require proof of an increased risk. For example in assault cases, especially in those involving travel-

ing employees or employees subjected to street perils, the "arising out of" element can be satisfied without proof of an increased risk to the employee. *Clem v. Steveco, Inc.* (1983), Ind.App., 450 N.E.2d 550, 553; *Suburban Ready Mix Concrete v. Zion* (1983), Ind.App., 443 N.E.2d 1241, 1242; *Ference*, at 737; *Mosbey*, at 913; *Burroughs Adding Machine Co. v. Dehn* (1942), 110 Ind.App. 483, 503, 39 N.E.2d 499, 507; *Lasear v. Anderson* (1934), 99 Ind.App. 428, 434, 192 N.E. 762, 765. Our supreme court also appears to have dispensed with the need to show an increased risk in a recent case in which an employee was attacked and killed by a lunatic. *Evans*, at 975. These cases allow proof of a causal connection under the "positional risk" test. *Olinger*, at 913; 1 Larson, *Workmen's Compensation Law* § 6.50 (1985).

Larson comments on the "positional risk" test, as follows:

"An important and growing number of courts are accepting the full implications of the positional-risk test: An injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. It is even more common for the test to be approved and used in particular situations. This theory supports compensation, for example, in cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in the particular place at the

particular time when he was injured by some neutral force, meaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment."

1 Larson, at § 6.50. Larson suggests that the positional risk test is used increasingly in assault cases to show the causal connection when the assault is shown to fall into a category [1] of neutral risks. *Id.* at § 11.30. Larson's neutral category of assaults includes:

"Those assaults which are in essence equivalent to blind or irrational forces, such as attacks by lunatics, drunks, small children, and other irresponsibles; completely unexplained assaults and assaults by mistake."

1 Larson, § 11.30. The facts of the present case fit within Larson's category of neutral assaults. Margaret was killed during the shooting spree of a lunatic. Therefore, as in the traveling employee and the street risks cases, this court will determine whether Margaret's death arose out of her employment based on the "positional risk" test. Authority from other jurisdictions supports our decision to analyze lunatic attacks under the "positional risk" test. 1 Larson, at § 11.32(b).

■ K–Mart argues that the risk in the present case should not be analyzed under the "positional risk" test. K–Mart acknowledges that Indiana does not adhere to a strict application of the "increased risk" test in all cases, but suggests that Indiana's deviations from this test are, and should be limited to traveling employee cases. K–Mart emphasizes the reasoning in the Court of Appeals decision in *Citizens*

---

1. Larson outlines three (3) categories of risks: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks of neither distinctly employment nor distinctly personal character (*i.e.,* neutral risks). Larson notes that the neutral category presents risk of loss problems because unfortunately the risk of loss of this category does not fall clearly upon either the industry or the employee. In answering the question of who should bear the burden for neutral risks Larson states,

"[T]he usual answer in the past has been to leave this loss on the employee, on the theory that he must meet the burden of proof of establishing affirmatively a clear causal connection between the conditions under which

he worked and the occurrence of the injury. More recently, some courts have reasoned in the following vein: Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee personally there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life."

1 Larson, at §§ 7.00–7.30. Indiana appears to be among the trend of jurisdictions that place the burden on the industry for neutral risks. *See e.g., Evans v. Yankeetown Dock Corp.* (1986), Ind., 491 N.E.2d 969, 975.

*Independent Telephone Co. v. Davis* (1950), 121 Ind.App. 20, 94 N.E.2d 495, *trans. denied,* 229 Ind. 217, 97 N.E.2d 490, which suggested that our supreme court specifically adopted and required the use of the "increased risk" test in *E.I. DuPont DeNemours v. Lilly* (1948), 226 Ind. 267, 79 N.E.2d 387. This court disagrees and K–Mart's reliance on the court of appeals reasoning is misplaced. Our supreme court denied transfer in *Davis* and did so by written opinion. *Citizens Independent Telephone Co. v. Davis* (1951), 229 Ind. 217, 97 N.E.2d 490. Denial of transfer by written opinion was not the general practice of the supreme court at that time. The supreme court denied transfer in this manner to state that the denial was not an affirmance of the court of appeals reasoning and interpretation of *Lilly. Davis,* 229 Ind. at 219, 97 N.E.2d at 491. Thus, the court of appeals' reasoning in *Davis* that use of the "increased risk" test was mandated by the supreme court was rejected by implication. This court notes also that the Act does not require use of the "increased risk" test. Furthermore, this court believes that the policy of the Act favors a liberal construction which would grant compensation to the employees in cases involving neutral risks.

■ In the present case, the evidence established that Margaret was at her station in the K–Mart store because of her employment. Absent her employment, Margaret would not have been required to be at the store, and would not have been subjected to the risk of death at the hands of a lunatic gunman. Thus, the risk was connected causally to, and was an incident of Margaret's employment with K–Mart. Therefore, the Board did not err by finding that Margaret's death "arose out of" her employment.

This court notes also that the Board's finding that Margaret's death "arose out of" her employment with K–Mart would be supportable under the "increased risk" test. The facts presented to the Board, although conflicting, indicated that the risk of encountering dangerous people was higher for Margaret than the non-employed general public. Unlike persons who do not work in stores and who would not be required to deal with and encounter potentially dangerous people, because of her job, Margaret was required to deal with the public and encounter potentially dangerous persons including lunatics. Therefore, the Board did not err by concluding that Margaret's death was compensable.

*Issue Two*

■ K–Mart argues next that Margaret's death is not compensable under the Workmen's Compensation Act. K–Mart suggests that the facts of the present case fall within the scope of the Victims of Violent Crimes Act, Indiana Code section 16–7–3.6–1 et seq., and that the more specific Crimes Act should be interpreted to supersede the Workmen's Compensation Act when injuries result from violent crimes. K–Mart is mistaken. When two statutes involve the same general subject matter, the statutes should be construed so as to give effect to both acts if possible. *Bell v. Bingham* (1985), Ind.App., 484 N.E.2d 624, 627. A later or more specific statute should not be construed to repeal or supersede the more general or previous statute unless an irreconcilable conflict exists or unless the legislature clearly intended such a result. *Indiana State Highway Comm'n v. Bates and Rogers Const., Inc.* (1983), Ind.App., 448 N.E.2d 321, 324. The legislature's intent is determined by a review of the whole statute. *Adult Group Properties, Ltd. v. Imler* (1987), Ind.App., 505 N.E.2d 459, 463.

This court's review of the Crimes Act, reveals that the legislature did not intend to supersede a victim's right to compensation under the Workmen's Compensation Act. In fact, the Crimes Act makes specific reference to the Workmen's Compensation Act in Indiana Code § 16–7–3.6–11, which provides, in part, as follows:

"Award modification to reflect other benefits or contributory fault of victim— Refund for overpayment required.—(a) The division shall reduce an award made under this chapter by the amount of benefits received or to be received from the following sources, if those benefits result

from or are in any manner attributable to the bodily injury or death upon which the award is based:

(1) Restitution from the offender.

(2) Benefits from a third party on behalf of the offender.

(3) Benefits from public or private pension programs, including social security benefits.

(4) Benefits from proceeds of insurance policies.

(5) *Benefits under IC 22-3-2 through IC 22-3-6.*

(6) Unemployment compensation benefits.

(7) Benefits from other public funds. Compensation shall be further reduced, or denied, to the extent that the claimant's loss is recouped from any other collateral sources. Additionally, the division shall determine whether the victim vigorously pursued recovery against available collateral sources described in this subsection. If the division finds that a victim has failed to pursue an applicable collateral source of recovery, the division shall reduce or deny an award under this subsection by the amount that is available to the victim through the collateral source."

This section of the Crimes Act reveals that the legislature intended that a victim could and should recover under both acts but would have to reduce his recovery under the Crimes Act by that amount which was received under the Workmen's Compensation Act. Therefore, the Board was not prohibited from awarding compensation.

### Issue Three

K–Mart argues next that our decision in *Portman v. Steveco* (1983), Ind.App., 453 N.E.2d 284, should be overturned to the extent that presumptive dependency is applied to husbands as well as wives. In *Portman,* the Third District of this court held that Indiana Code section 22–3–3–19 unconstitutionally discriminated against male survivors as compared to similarly

situated female survivors. *Portman,* at 287. K–Mart does not challenge this holding;[2] rather, K–Mart argues that the Third District fashioned an improper remedy. This court disagrees. In fashioning the remedy the Third District looked to the legislative intent of the Act and determined that an extension of presumptive dependency was favored. *Portman,* at 287–88. This intent was forwarded by striking the unconstitutional portion of the statute, and by extending the presumption of dependency to males as well as females. The Third District fashioned the proper remedy and this court will not reverse its determination.

### Issue Four

K–Mart argues next that the Board erred by finding that K–Mart was estopped from arguing that compensation was not available under the Act. Regardless of the merit of this issue, our determination that the Board's award of compensation was proper under the Act and supported by the evidence renders this issue moot. Therefore, we do not decide this issue.

### Issue Five

■ K–Mart argues last that the Board erred by awarding a lump sum payment. Under the Act the Board may award a lump sum payment pursuant to Indiana Code section 22–3–3–25, which provides as follows:

"Lump sum payment of commutable value of instalments.—In unusual cases, upon the agreement of the employer and the employee or his dependents, and the insurance carrier, and the approval of the industrial board, compensation may be redeemed, in whole or in part, by the cash payment, in a lump sum, of the commutable value of the instalments to be redeemed.

"The board may, at any time, in the case of permanently disabling injuries of a minor, require that he be compensated by the cash payment in a lump sum of the commutable value of the unredeemed

---

**2.** This court notes that the Legislature's subsequent amendment to the statute in P.L. 152, 1987, § 6 which retained the language that the court of appeals struck in *Portman* is subject to the same constitutional infirmity.

instalments of the compensation to which he is entitled.

"In all such cases, the commutable value of the future unpaid instalments of compensation shall be the present value thereof, at the rate of three per cent [3%] interest, compounded annually."

In the present case, neither of the pre-conditions to a lump sum award exists. Margaret was not a minor and K–Mart did not enter into an agreement with Joseph for a lump sum award. Therefore, the lump sum award was improper, and accordingly this portion of the Board's decision is reversed and remanded with instructions to award compensation according to Indiana Code section 22–3–3–17, which provides for payment over five hundred (500) weeks.

*Issue Six*

■■■ Joseph argues that this court should award attorney's fees. Joseph improperly bases his claim on Indiana Code section 34–1–32–1. The proper statutory provision for attorney's fees in workmen's compensation cases is Indiana Code section 22–3–4–12. To collect fees under this section the claimant first must request them from the Board and present evidence thereon, then the Board must make a determination on the request. None of the foregoing conditions precedent to an award of attorney's fees exists in the present case. Thus, an award of fees cannot be sustained by this court under this statute. To the extent that Joseph's request for fees could be interpreted as a request for appellate attorney fees, this court holds such fees are not warranted. To award appellate attorney fees under Appellate Rule 15(G) for a meritless appeal the proponent must establish that the appeal was "utterly devoid of all plausibility". *Orr v. Turco Mfg. Co.* (1987), Ind., 512 N.E.2d 151, 153. The present appeal does not meet this test. Therefore appellate attorney's fees are denied.

■■■ Joseph argues last that the Board's award should be increased by ten percent (10%) under Indiana Code section 22–3–4–8(f) which provides, as follows:

"An award of the full board affirmed on appeal, by the employer, shall be increased thereby five percent (5%), and by order of the court may be increased ten percent (10%)."

This court agrees the award should be increased, because the award was affirmed. However, since K–Mart successfully argued the impropriety of the lump sum award, the award is increased only by five percent (5%).

Affirmed in part, and reversed in part and remanded with instructions to order payment over five hundred (500) weeks and to increase the award by five percent (5%).

ROBERTSON, J., concurs.

NEAL, J., concurs with separate opinion.

NEAL, Judge, concurring.

I agree with the majority opinion in its totality, but I wish to add one more observation. In *Wayne Adams Buick, Inc. v. Ference* (1981), Ind.App., 421 N.E.2d 733, *trans. denied,* a bookkeeper of an automobile agency was mugged and robbed of personal possessions by hoodlums while mailing company letters in a mailbox just across the street from the agency. Based on the peril of the street doctrine, we held that her injuries arose out of the employment. In discussing the peril of the street doctrine, we note that on the streets of cities vehicles may collide, mad dogs may run wild, gunmen may discharge their weapons, madmen may be afoot, and police may shoot at fugitives. In such encounters an employee, while conducting his employer's business, may be injured, in which event the cases hold that his injuries arose out of the employment.

K–Mart is a large open concept store which is as accessible as the open street to lunatics and gunmen. The same philosophical underpinning which supported the recovery in *Wayne Adams* supports the recovery here. Recovery is not to be denied because Margaret Novak was performing her duties just inside the store, and not just outside the store as was Lu-

cille Ference. Causation and results are identical in the two cases.