Smith CONWAY, Jr., by Naomi
CONWAY, Appellant–
Plaintiff,

v.

SCHOOL CITY OF EAST CHICAGO,
Appellee–Defendant.

No. 93A02–0002–EX–106.

Court of Appeals of Indiana.

Aug. 22, 2000.

Patrick J. Bennett, Andrew P. Sheff, Bennett & Sheff, Indianapolis, Indiana, Attorneys for Appellant.

James E. Schreiner, Schreiner & Malloy, P.C., Schererville, Indiana, Attorney for Appellee.

## OPINION

RILEY, Judge

### STATEMENT OF THE CASE

Plaintiff–Appellant Naomi Conway (Conway), on behalf of her deceased husband, Smith Curt Conway, Jr. (Curt), appeals the decision of the Full Worker's Compensation Board of Indiana (Board), for failing to provide an award as a result of her spouse's death.

We affirm.

### ISSUE

Conway raises two issues, which we consolidate and restate as one dispositive issue:[1] whether sufficient evidence exists to support the Board's finding that her spouse's death did not arise *out of* his employment.

### FACTS AND PROCEDURAL HISTORY

Curt was employed as a school bus driver by Defendant School City of East Chicago (City). His job required all drivers to park their buses in the Central Services Facility (Facility) when not transporting children. That facility was owned and operated by the East Chicago Sanitary District. Cuban Harris (Harris) was one of two employees of the East Chicago Sanitary District who worked in the gatehouse of the facility. His tasks consisted of opening and closing the Facility gate. On April 7, 1995, Harris killed Curt.

That day, Curt had completed his work duties, and had proceeded to the Facility gate in his vehicle to exit and head home, when he was fatally shot by Harris. Eu-gene Williams (Williams), who was the Foreman in charge of Harris, was present at the gate. Curt had stopped to talk to Williams. Harris came running toward the vehicle while he cursed Curt using vile language and said, "He was the one that caused my problem." (R. 119). William then told Harris, "What the hell is going on with you? [sic] What are you cursing this man for? Get on back to the shed over there. I'm talking to this man." (R. 119). Harris, however, ignored Williams' command. Instead, he fired gunshots into Curt's vehicle, striking him in the arm and back. Williams disarmed Harris immediately afterward, called an ambulance, and notified the police. Later, after this tragic incident, Williams testified in his deposition that he had heard of some type of a personal dispute that existed between Harris and Curt.

Conway, the decedent's spouse, was financially dependent on Curt at his time of death. Although no medical expenses were incurred, Conway did pay $4,334.92 in funeral expenses, which she seeks to collect.

On March 31, 1997, Conway filed an Application for Adjustment of Claim with the Worker's Compensation Board. On May 27, 1999, a hearing was held on the Application before a Hearing Member of the Board. The parties submitted at the hearing a Trial Stipulation setting out agreed facts, issues, and exhibits. Brief testimony was also heard from Conway to establish her statutory entitlement to damages as her deceased spouse's widow. The Hearing Member, pending submission of briefs by counsel, took the matter under advisement. On August 14, 1999, that

---

1. Conway also raises the issue of whether sufficient evidence exists to support the Board's finding that her spouse's death did not arise *in the course of* his employment. However, we refrain from addressing this issue for two reasons: (1) the Board does not address it and (2) we find that sufficient evidence exists to support the Board's conclusion that her spouse's death did not arise out of his employment. For an injury to be compensable under the Worker's Compensation Act, the injury must both arise "out of" the employment and arise "in the course of" the employment. Under the Act, both requirements must be met before compensation is awarded, and neither alone is sufficient. *Rogers v. Bethlehem Steel Corp.*, 655 N.E.2d 73, 75 (Ind.Ct.App.1995). Since Conway's argument fails on the first issue, she cannot succeed on both, and thus the second issue is moot.

Hearing Member found in favor of the City, concluding that the decedent's death did not arise out of his employment.

Conway filed her Application for the Review by Full Board of Original Decision on August 17, 1999. On February 15, 2000, the Full Board affirmed the Hearing Member's decision. Conway now brings this appeal of the Board's decision.

## DISCUSSION AND DECISION

The thrust of Conway's argument rests upon the contention that the evidence does not support the Board's finding that Harris had a prior animosity toward the decedent unrelated to work. Conway contends that the decedent's death arose out of his employment at the City because there was evidence that (1) Curt came in daily contact with Harris at the Facility as he entered and exited through the security gate and that (2) Harris had been disciplined by his employer in the past for becoming agitated at another bus driver who drove past the gate without showing him respect. Conway thus argues that the Board incorrectly determined that Curt's death did not arise out of his employment, and that this determination ignores the fact that, but for the requirement of Curt's job that he pass through the security gate several times a day, Harris would not have shot him. We disagree.

Conway's arguments closely tracks the findings made by the Hearing Member of the Board, which she claims are all reversible error. The Hearing Member found as follows:

1. That the evidence fails to disclose that Decedent's death arose out of some work-related risk.

2. That there is no evidence to connect the employment conditions and the resulting death.

3. That the evidence shows that the assailant had a prior animosity toward the decedent, and no evidence was presented that such dispute was related to work.

4. That this Single Hearing Member is unable to presume that the dispute was work related.

(R. 75). Based on these findings, the Award stated, in pertinent part:

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the worker's Compensation Board of Indiana that Decedent's gun [sic] shot wounds occurring on April 7, 1995, did not arise out of and in the course of his employment with Defendant.

IT IS FURTHER ORDERED that Plaintiff take nothing as against Defendant by way of her Application for Adjustment of Claim filed March 31, 1997.

(R. 75). All four findings by the Board essentially restate that no evidence exists to find that Harris's animosity toward Curt was related to work. In turn, Conway makes a sufficiency of evidence claim and we address it as such.

### I. *Standard of Review*

In contesting the Board's decision, Conway confronts a stringent standard of review. When reviewing a decision of the Full Worker's Compensation Board, we are bound by the factual determinations of the Board and will not disturb them unless the evidence is undisputed and leads inescapably to a contrary conclusion. *See Rogers,* 655 N.E.2d at 75. We must disregard all evidence unfavorable to the decision and must examine only that evidence and the reasonable inferences therefrom which support the Board's findings. *See Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792, 794 (Ind.Ct.App. 1994). This Court neither reweighs the evidence nor judges the credibility of the witnesses. *See id.* Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. *See Lona v. Sosa,* 420 N.E.2d 890, 894 (Ind.Ct.App.1981). In reviewing a decision of the Board, we review the record to determine if there is any competent evidence of probative value to support the Board's findings. We then

examine the findings to see if they are sufficient to support the decision. *See K-Mart Corp. v. Morrison,* 609 N.E.2d 17, 27 (Ind.Ct.App.1993). If the Board reaches a legitimate conclusion from the evidentiary facts, the appellate court cannot disturb that conclusion although it might prefer another conclusion equally legitimate. *See Kovatch v. A.M. General,* 679 N.E.2d 940, 943 (Ind.Ct.App.1997), *trans. denied.* Therefore, to prevail upon her appeal, Conway is required to show that there was no probative evidence from which the Board could reasonably have decided in the City's favor. We find that not to be the case.

## II. *Sufficiency of Evidence*

■ The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind.Code § 22-3-2-2(a). Thus, for an injury to be compensable under the Act, the injury must both arise "out of" the employment and arise "in the course of" the employment. Under the Act, both requirements must be met before compensation is awarded, and neither alone is sufficient. *See Rogers,* 655 N.E.2d at 75. "Arising out of" refers to the origin and cause of the injury, while "in the course of" refers to the time, place, and circumstances under which the injury occurred. *Id.* The person who seeks Worker's Compensation benefits bears the burden of proving both elements. *See K-Mart Corp. v. Novak,* 521 N.E.2d 1346, 1348 (Ind.Ct.App.1988). Here, Conway argues that the evidence does not support the Board's findings and the findings do not support its conclusion that the decedent did not satisfy the Worker's Compensation requirements.

■ First, Conway claims that the Board's finding that Harris had a prior animosity toward Curt unrelated to work is contrary to the evidence. In making her argument, Conway brings this court's attention to the stipulated fact that the decedent came in daily contact with Harris at the Facility as he entered and exited through the security gate. She also reminds this court that Harris was disciplined in the past by his employer for becoming agitated at another bus driver who drove past the gate without showing him respect. These facts, Conway claims, constitute sufficient evidence to find that a prior animosity between Harris and the decedent was related to work. However, we are mindful of our standard of review and, from the outset, Conway's invitation to invade the province of the Board and reweigh the evidence is declined.

This court disregards all evidence unfavorable to the Board's decision and examines only that evidence and reasonable inference therefrom, which support the Board's conclusion. *See Four Star Fabricators, Inc.,* 638 N.E.2d at 794. Moreover, this court cannot disturb the factual findings of the Board unless the evidence is undisputed and leads inescapably to a contrary result. *See Rogers,* 655 N.E.2d at 75. The evidence in the Record favorable to the judgment indicates that Harris was angry at the time of the incident. He ran cursing at the decedent and, before killing him he shouted, "He was the one that caused my problem." (R. 119). Because of this statement and Conway's failure to present contrary evidence that the dispute was related to work, we find that this evidence was sufficient for the Board to conclude that a personal conflict, unrelated to work, existed between Curt and Harris.

■ Next, Conway argues that the Single Member and Full Board erred in applying the law to the findings. Conway relies heavily on *K-Mart Corp. v. Novak,* 521 N.E.2d 1346 (Ind.Ct.App.1988), and argues that the Board failed to apply the correct test in determining whether the requisite causal relationship existed between the decedent's death and his work. Specifically, she claims that the Board should have utilized a "positional-risk test" rather than the general rule, which is an "increased risk test." Under the position-

al-risk test, Conway contends that she would prevail, because *but for* the requirement of the decedent's job that he pass through the gate, the decedent would not have been there at that time and day of the accident, and thus he would not have been shot. This argument, however, overlooks the important finding that Harris had a prior animosity towards Curt unrelated to work which distinguishes *K–Mart Corp. v. Novak* from the case at bar.

■■■■■ An injury *arises out of* employment when a causal nexus exists between the injury and the employment. *See Rogers*, 655 N.E.2d at 75. The claimant can establish a causal connection by showing that a rational mind might comprehend that the accident was a risk incidental to the employment. *See K–Mart Corp.*, 521 N.E.2d at 1348. This risk does not need to be expected or foreseen to be incidental to employment. *See id.* As a general rule, "a risk is incidental to the employment if the risk involved is not one to which the public at large is subjected." *See id.* (citations omitted). This general rule is referred to as the "increased risk" test. *See id.*

■■■■■ Our courts sometimes apply another test referred to as "positional risk" if the risk appears "neutral." *See id.* at 1349. Examples of "neutral risks" include "cases of stray bullets, roving lunatics, and other situations in which the only connection of the employment with the injury is that its obligations placed the employee in a particular place at a particular time when he was injured by some neutral force, meaning by *neutral* neither personal to the claimant nor distinctly associated with the employment." *K–Mart*, 521 N.E.2d at 1349 (citing 1 Larson, *Workmen's Compensation Law* Sec. 6.50 (1985)). The commonality of these examples lies in their unexplainable nature because of the irrational forces at play. *See id.* If a positional risk test applies, then "[a]n injury *arises out of* employment if it would not have occurred *but for* the fact that the conditions and obligations of the

employment placed claimant in a position where he was injured." *Id.* (citing 1 Larson, at Sec. 6.50). Here, the risk involved was not neutral. Harris had personal animosity toward the decedent unrelated to work. This finding makes Conway's case subject to an increased risk analysis to determine whether Curt's death arose out of his employment.

■■■■ Under an increased risk analysis there is *per se* no causal nexus when an injury arises from a personal conflict unrelated to work. In *Rogers v. Bethlehem*, 655 N.E.2d 73 (Ind.Ct.App.1995), a co-employee robbed and killed the decedent during work hours while on the employer's premises. A panel of this court held that the decedent's death was not a compensable accident under the act because it was a result of personal animosity by the perpetrator. *See id.* Similarly, in *Peavler v. Mitchell & Scott Machine Co., Inc.*, 638 N.E.2d 879 (Ind.Ct.App.1994), this court denied compensation where a person came to his ex-girlfriend's work, found her, and shot her while she was in the course of her employment. There, a panel of this court stated, that harms arising from a personal risk are universally non-compensable. *See id.* As in *Peavler* and *Rogers*, the Board in the case at bar determined that Curt's death was a result of prior animosity by Harris. No evidence was presented to the Board nor does the record reveal that Harris's animosity toward Curt may have been work related. This personal risk, which Curt was subjected to, was not incidental to his employment because the public at large is also subjected to that same risk of being attacked for personal reasons on a daily basis, regardless of where they are employed. As such, we find that Curt was not subjected to an increased risk of Harris harming him by working for the City. Therefore, Curt's death did not arise out of his employment with the City.

### CONCLUSION

In conclusion, the Record reveals that sufficient evidence was presented for the

Single Member of the Board to find that a prior animosity unrelated to work existed between Harris and Curt. Because of this finding, we conclude that the decedent's injury did not arise out of his employment, and that his death is not compensable under the Worker's Compensation Act.

BAKER, J., and KIRSCH, J., concur.