**INDIANA MICHIGAN POWER COMPANY, Appellant–Defendant,**

v.

**Ralph ROUSH, Appellee–Plaintiff.**

No. 93A02–9802–EX–103.

Court of Appeals of Indiana.

March 15, 1999.

Edward L. Murphy and Diana C. Bauer, Miller Carson Boxberger & Murphy, LLP, Fort Wayne, for Appellant.

Sean E.G. Kenyon and Robert J. Konopa, Konopa & Murphy, P.C., South Bend, for Appellee.

## OPINION

MATTINGLY, Judge.

Indiana Michigan Power Company (I & M) appeals from a decision of the full Worker's Compensation Board (Board) awarding death benefits to Lois Roush, the widow of Ralph Roush (Roush). It raises the following issues:

1) Whether the Board's findings were stated with sufficient specificity; and

2) Whether the Board erred in concluding that Roush's choking arose out of his employment.[1]

We reverse.

## FACTS AND PROCEDURAL HISTORY

On November 11, 1994, Roush was assigned as the relief telephone operator at I & M. On his way to the switchboard, Roush picked up a roast beef sandwich provided by an outside company that held a meeting at I & M's building.[2] After swallowing approximately half of the sandwich at one time, Roush began to choke. Efforts to perform the Heimlich maneuver were unsuccessful, and Roush was taken to Memorial Hospital.

Roush was treated by Dr. Stoller, who noted that Roush had swallowed a "large piece of sandwich, in fact a very, very large piece, and impaled it into the back of his throat and actually down into the proximal trachea." R. at 362. As a result, Roush was unable to inhale air into his lungs. According to Dr. Stoller, when a person swallows

food, the epiglottis covers the glottis so that swallowed food travels down the esophagus rather than down the trachea. Roush swallowed the large piece of sandwich so quickly that the food arrived before the glottis could cover the epiglottis, which propelled the food into Roush's proximal trachea. Dr. Stoller noted the piece of sandwich "was just literally packed in there." *Id.* at 363.

Dr. Stoller opined that the food became lodged in Roush's throat because Roush failed to properly chew his food. Dr. Stoller also noted he could not see how Roush was able to get such a large amount of food in his mouth. *Id.* at 365. According to Dr. Stoller, Roush's manner of eating his sandwich and this particular choking incident could have happened anywhere. *Id.* at 366. On November 15, 1994, Roush died of cardiac dysrythmia caused by anoxic encephalopathy from asphyxiation as a consequence of the food being lodged in his upper airway.

Roush had a history of eating his food without chewing. Patty Olson, an I & M employee, began working with Roush in October of 1986. She and Roush often ate lunch at their desks, so she had numerous opportunities to observe Roush's eating patterns over the course of eight years. Olson testified that Roush always ate his food rapidly. He would "eat a great deal, store it in his cheeks, store the food in his mouth, and then like wash it down with … whatever liquid he was drinking." *Id.* at 141. Olson spoke to Roush on occasion about the manner in which he ate. Roush responded by telling Olson "this is just the way I am." *Id.* Roush also choked at work while eating an apple in July 1992.

Roush's widow sought workers' compensation benefits. An award was entered in favor of Roush and against I & M on February 28, 1997. On January 22, 1998, the Board entered a 5–1 decision affirming the award. The Board's Findings of Fact and Conclusions of Law were as follows:

---

1. I & M also argues the Board abused its discretion in denying I & M's Motion to Submit Additional Evidence. Because we reverse the Board's holding on other grounds, we need not address this argument.

2. I & M allowed its employees to eat food left over after such meetings.

1. It is further found that the basic facts surrounding the employee's death are not in conflict, including but not limited to the following:

 a. Ralph Roush ate and drank rapidly;

 b. The evidence revealed only two prior choking incidents; one at work in 1992 and another described by Mrs. Roush;

 c. The employer allowed employees to have food left over from parties and to eat at their workstations.

 d. Ralph Roush was on duty at his workstation engaging in an activity allowed by his employer when the choking incident occurred;

 e. Ralph Roush's choking on the date of the incident, which resulted in his death, was an unexpected result of his habit of eating and drinking quickly.

2. It is further found that the employee's act of choking on or about November 11, 1994 did constitute an accidental injury arising out of and in the course of his employment.

*Id.* at 118–21.

### STANDARD OF REVIEW

■ On appeal from a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Duvall v. ICI Americas, Inc.,* 621 N.E.2d 1122, 1124 (Ind.Ct.App. 1993). However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to the one reached by the Board. *Eastham v. Whirlpool Corp.,* 524 N.E.2d 23, 26 (Ind.Ct.App.1988).

■ As a general rule, the issue of whether an employee's injury or death arose "out of and in the course of" his or her employment is a question of fact to be determined by the Board. *Lona v. Sosa,* 420 N.E.2d 890, 894 (Ind.Ct.App.1981). However, when the facts relating to the question of liability under the Worker's Compensation Act are undisputed and lead to only one reasonable inference, the determination of whether an injury or death "arose" out of

and in the course of employment is a question of law. *Sanchez v. Hamara,* 534 N.E.2d 756, 758 (Ind.Ct.App.1989). We may reverse the Board's decision on a question of law if the undisputed evidence reveals that the Board's decision is an incorrect interpretation of law. *Duvall,* 621 N.E.2d at 1124.

### 1. *Whether the Board's Findings Are Sufficiently Specific*

■ I & M argues the Board's findings are not sufficiently specific to reveal the full basis of the Board's conclusion that Roush's choking death constituted an accidental injury arising out of and in the course of his employment. We note the Board has an obligation to enter specific findings of basic facts to support its finding of ultimate fact and conclusion of law. *Perez v. United States Steel Corp.,* 426 N.E.2d 29, 32 (Ind. 1981). The Board's findings must be stated with sufficient specificity upon contested issues so as to allow intelligent review by a reviewing court. *Starks v. National Serv-All, Inc.,* 634 N.E.2d 88, 90 (Ind.Ct.App. 1994).

■ To recover under the Worker's Compensation Act, a claimant must establish that an injury or death occurred "by accident arising out of and in the course of employment." Ind.Code § 22–3–2–2(a); *Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969, 973 (Ind.1986). An injury is accidental "when it is the unexpected consequence of the usual exertion or exposure of the particular employee's job." *Id.* at 974. The words "arising out of" refer to the origin or cause and are descriptive of the accident's character. *Rogers v. Bethlehem Steel Corp.,* 655 N.E.2d 73, 75 (Ind.Ct.App.1995). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Burke v. Wilfong,* 638 N.E.2d 865, 869 (Ind.Ct.App.1994). This causal relationship is established "when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it." *Id.*

In this case, the Board's Findings of Fact and Conclusions of Law make no specific findings as to the causal nexus between

Roush's choking death and the duties or services he performed for I & M. The Board merely states that "Roush was on duty at his workstation engaging in an activity allowed by his employer when the choking incident occurred," and that the choking was "an accidental injury arising out of and in the course of his employment." R. at 118–21. From these findings of fact and conclusions of law, we are unable to ascertain whether choking at one's work station is something that a reasonably prudent person would consider to be incidental to employment. Thus, we find the Board's Findings of Fact and Conclusions of Law inadequate to support its award of death benefits to Roush's widow.

### 2. Whether Choking Death Arose out of Employment

■ I & M further argues that the Board erred in finding that Roush's choking arose out of and in the course of his employment. We agree. For an injury to be compensable under the Worker's Compensation Act, it must both arise "out of" and "in the course of" the employment. Ind.Code § 22–3–2–2(a). Both requirements must be fulfilled before compensation is awarded; neither alone is sufficient. *See Four Star Fabricators, Inc. v. Barrett,* 638 N.E.2d 792, 794 (Ind.Ct.App.1994). Risks causing injury or death to an employee may be divided into three categories: 1) risks distinctly associated with the employment; 2) risks personal to the claimant; and 3) "neutral" risks which have no particular employment or personal character. *Rogers,* 655 N.E.2d at 75. As explained in *Peavler v. Mitchell & Scott Machine Co.,* 638 N.E.2d 879, 881 (Ind.Ct.App. 1994), *reh'g denied, trans. denied:*

> Generally, the risks that fall in the first and third categories are covered by the Indiana Worker's Compensation Act. However, harms which arise in the second category, from risks personal to the claimant/employee, are universally noncompensable.

(citations omitted).

■ I & M argues that Roush's risk of choking was a personal risk which was not covered by the Worker's Compensation Act. Roush, in turn, contends that the risk of choking was distinctly associated with and arose out of his employment. Under Indiana law, risks which are incidental to and deemed arising out of employment include personal acts of employees which are reasonably necessary to their life, comfort or convenience, even though such acts are not technically acts of service. *Indiana & Mich. Elec. Co. v. Morgan,* 494 N.E.2d 991, 993 (Ind.Ct.App. 1986), *reh'g denied, trans. denied. See also Vendome v. Gibson,* 122 Ind.App. 604, 614–15, 105 N.E.2d 906, 910 (1952), *reh'g denied* (accident in which employee's fingers were severed when employee reached into employer's icemaker to get ice for personal consumption held arising out of and in course of employment); *Prater v. Indiana Briquetting Corp.,* 253 Ind. 83, 90, 251 N.E.2d 810, 813 (1969) (accident in which employee was killed when struck by train while he was traveling to nearby business establishment to purchase soft drinks held arising out of and in course of employment).

While some accidents involving such personal acts may be compensable under the worker's compensation statute as work-related injuries, the claimants still carry the burden of demonstrating some causal connection between the death and the employment. In *Jablonski v. Inland Steel Co.,* 575 N.E.2d 1039 (Ind.Ct.App.1991), *reh'g denied,* Daniel Jablonski suffered a fatal heart attack while at work. We affirmed the Board's finding that there was no causal connection between Jablonski's heart attack and his employment, stating: "[t]he mere fact that Daniel was performing his usual everyday tasks when he suffered the fatal heart attack does not establish a right to worker's compensation benefits unless there was some event or happening beyond mere employment." *Id.* at 1043.

Other jurisdictions have addressed whether the risks associated with a choking death are personal risks which are compensable as work-related injuries. *See Klein v. Terra Chems.,* 14 Md.App. 172, 286 A.2d 568 (1972); *Williams v. Industrial Comm'n,* 38 Ill.2d 593, 232 N.E.2d 744 (1967). In *Forsythe v. INCO,* 95 N.C.App. 742, 384 S.E.2d 30 (1989), Forsythe, a mentally-retarded woman, was employed at a workshop. During a lunch break, she began choking on a peanut-butter

sandwich. She was transported to the hospital, where a "big glob" of the sandwich was removed from her pharynx. She suffered brain damage and later died. Forsythe's mother filed a workers' compensation action, which was denied. The North Carolina Court of Appeals affirmed that decision, finding that Forsythe's choking did not arise out of her employment. "[T]he fact that she ate lunch on the premises did not subject her to any greater risk from eating her food than would have been the case if she had taken her lunch at home, or anywhere else for that matter." *Id.* at 32.[3]

Similarly, in this case, Roush's habit of putting a large amount of food in his mouth at one time and attempting to swallow it whole was a personal risk to which he would have been exposed each time he ate, whether that act occurred at work, at home or at a restaurant. Nothing about Roush's employment increased his risk of choking or was causally connected to it.[4] Because Roush's choking was a personal risk, the Board erred in finding his death arose out of his employment. Thus, we reverse the Board's decision.

Reversed.

FRIEDLANDER, J., and NAJAM, J., concur.

---

**3.** Roush argues that some jurisdictions have found choking incidents to have arisen out of employment, relying specifically on *Travelers Ins. Co. v. Majersky*, 531 S.W.2d 765, 768 (Mo.Ct.App. 1976). However, *Travelers* involved a newspaper editor who choked while attending a banquet which his employer required him to attend. In that case, it is clearer that his choking occurred while he was directly performing duties on behalf of his employer.

**4.** Counsel for Roush argues Roush was suffering from job-related stress when he choked. We will not review this claim as that issue was not raised before either the single hearing member or the Board. Where neither the hearing member nor the Board addresses an issue, a litigant cannot raise that issue for the first time on appeal. *Reeve v. Georgia–Pacific Corp.*, 510 N.E.2d 1378, 1385 (Ind.Ct.App.1987). *See also Indiana & Mich. Elec. Co. v. Terre Haute Indus.*, 467 N.E.2d 37, 41–42 (Ind.Ct.App.1984) (appellate court cannot consider an issue raised by a party for the first time on appeal where this court is without the benefit of any guidance from the trier of fact on that issue).