**Phyllis MILLEDGE, Employee–Appellant,**

v.

**THE OAKS, A Living Center, Employer–Appellee.**

No. 93A02–0104–EX–233.

Court of Appeals of Indiana.

Jan. 23, 2002.

Publication Ordered March 4, 2002.

Ronald E. James, Benson, Pantello, Morris, James & Logan, Fort Wayne, IN, Attorney for Appellant.

Robert D. Woods, Hunt, Suedhoff, Kalamaros, LLP, South Bend, IN, Attorney for Appellee.

### OPINION

BARNES, Judge.

#### Case Summary

Phyllis Milledge appeals the denial of her worker's compensation claim against The Oaks, A Living Center by the Full Worker's Compensation Board. We affirm.

## Issues

Milledge presents the following three restated issues:

I. whether her activity at the time she was injured was causally related to her employment such as to have "arisen from" the employment;

II. whether the Board made findings of fact sufficient to support its decision; and

III. whether the Board erred in concluding she was not entitled to benefits.

## Facts

Milledge, a diabetic, worked at The Oaks as a housekeeper for eleven years. On Friday, October 21, 1994, she twisted her ankle in the Oaks' parking lot when she arrived at work for her 7:00 a.m. shift. Her ankle hurt progressively more throughout her shift, so much so that she left work early and went to a hospital emergency room for treatment. Hospital x-rays revealed only a severe sprain; however, because her ankle was still bothering her one week after the injury, she saw her family physician, Dr. Glassley, on Friday, October 28. Around the time of that doctor visit, a blister measuring approximately three to three and one-half inches in diameter appeared on the injured ankle. A few days later, Milledge was feverish and her leg hurt. Her husband suggested he might lance the blister, which he did. Two days later, he took Milledge to the hospital, where she received antibiotic treatment. However, she developed gangrene, which required the amputation of her leg below the knee on November 14. On September 5, 1995, Milledge filed a worker's compensation claim with the Board. A single member of the Board, acting as a hearing judge, conducted a hearing on July 21, 1999. The parties stipulated as to Milledge's average weekly wage and that Milledge had injured herself in The Oaks' parking lot; however, The Oaks maintained that her injury did not arise out of her employment. At the hearing, Milledge introduced a letter dated November 4, 1996, from Dr. William H. Couch, the orthopedic surgeon who amputated her leg below the knee. This letter included his "unequivocal statement that . . . it would appear that [Milledge's] diabetes was a complicating factor, but the ankle injury that she sustained was the instigating fact that led to her subsequent infection, and multiple surgeries eventuating in an amputation." Appellant's Appendix p. 16. The Oaks produced a report by Dr. John Cavanaugh of the South Bend Clinic and SurgiCenter, which stated in part his belief "that [Milledge's] ankle sprain that she sustained in the parking lot was necessary but not sufficient for the development of gangrene and subsequent need for amputation." Appellant's Appendix p. 20.

On September 30, 1999, the Board entered its judgment, determining in relevant part as follows:

1. [Milledge] injured her right ankle when either stepping down, or twisting while turning to close the car door after arriving at work on October 21, 1994, but before beginning her work. [Milledge] continued into work. . . . No other event occurred during [Milledge's] work day, which would have caused or exacerbated her injury from the parking lot.

2. That the asphalt surface of the parking lot, where the injury occurred, was clean, dry, level and free of debris, and nothing about [the] parking lot would have caused or contributed to [Milledge's] injury.

## CONCLUSIONS

\* \* \* \* \*

2. The record shows [Milledge's] injury may have occurred in the course of her employment, but fails to show any causal connection between her ankle sprain and her work duties for the Defendant. Thus, [her] injury did not arise out of and in the course of her employment with Defendant for the purposes of the Act.

Appendix pp. 8–9. The full Board adopted this decision on March 13, 2001, and Milledge appeals.

## Analysis

### *Standard of review*

■ On appeal from a decision of the full Worker's Compensation Board, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Indiana Michigan Power Co. v. Roush,* 706 N.E.2d 1110, 1113, (Ind.Ct.App.1999), *trans. denied.*

■ "It is the burden of the claimant to prove a right to compensation under the Worker's Compensation Act." *Jablonski v. Inland Steel Co.,* 575 N.E.2d 1039, 1041 (Ind.Ct.App.1991), *trans. denied* (1992). Therefore, in seeking review of the Board's adverse determination Milledge appeals from a negative judgment. " 'A negative award may be sustained by an absence of evidence favorable to the claimant's contentions or by the presence of evidence adverse to the claimant's contentions.' " *Starks v. Nat'l Serv–All, Inc.,* 634 N.E.2d 88, 91 (Ind.Ct.App.1994) (quoting *Duncan v. George Moser Leather Co.,* 408 N.E.2d 1332, 1339 (Ind.Ct.App.1980)).

### I. *Causal Relationship—Injury "Arising From" Employment*

■ "Worker's compensation benefits are awarded to employees only for injuries which arise out of and in the course of employment *and a claimant must show a causal connection between his or her employment and injury for the injury to have been received in the course of the employment.*" *Donahue v. Youngstown Sheet & Tube Co.,* 474 N.E.2d 1013, 1014 (Ind.1985) (emphasis added); *see also Evans v. Yankeetown Dock Corp.,* 491 N.E.2d 969, 975 (Ind.1986) (citing *Youngstown* for the proposition that "a causal connection between the injury and the employment is clearly necessary to qualify for workman's [sic] compensation benefits."), and *Blaw–Knox Foundry & Mill Machinery, Inc. v. Dacus,* 505 N.E.2d 101, 103 (Ind.Ct.App. 1987) ("For an accident to arise out of employment, there must be a causal relationship between the employment and the injury. However, such a connection is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the work. It is not necessary that the injury should have been expected or foreseen."), *trans. denied.*

In *Youngstown,* the employee-claimant Donahue had completed her duties and clocked out, had left Youngstown's premises, was crossing a public street, was not directed by Youngstown to park her vehicle on Dickey Road and was struck by a non-employee on the public highway. Of crucial importance to our supreme court's determination that the requisite causal connection did not exist in that case was the fact that Donahue had left Youngstown's premises. In *Evans,* the injured employee *was* on his employer's premises when he was shot and killed by an insane co-worker. He had "arrived at work at the usual time, [and] paused before commencing his duties to drink coffee with fellow employees, as was customary, at the eating area provided by Yankeetown for the employees." Combined with the fact that the employee was in Yankeetown's employ at the time of his death, the court found that he was killed "by accident aris-

ing out of and in the course of his employment," and that worker's compensation was his sole remedy. Of particular relevance to this case, the court also cited approvingly a case from this court as follows:

> While the course of employment embraces a reasonable interval before and after working hours if the employee is on the premises engaged in preparatory or incidental activity reasonably related to his work, [citation omitted] what constitutes a reasonable interval depends on the length of time involved, the circumstances occasioning the interval, and the nature of the employee's activity.

*Evans,* 491 N.E.2d at 976 (citing *Lona v. Sosa,* 420 N.E.2d 890, 894 (Ind.Ct.App. 1981)). Undisputedly, Milledge was on her employer's premises when injured and as such the injury occurred "in the course of" her employment. However, that fact does not in itself end the inquiry, as the injury must also "arise out of" her employment to be compensable. *See Roush,* 706 N.E.2d at 1114 (noting that "[b]oth requirements must be fulfilled before compensation is awarded; neither alone is sufficient.").

■■■ "The words 'arising out of' refer to the origin or cause and are descriptive of the accident's character." *Id.* at 1113 (citing *Rogers v. Bethlehem Steel Corp.,* 655 N.E.2d 73, 75 (Ind.Ct.App.1995)). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Burke v. Wilfong,* 638 N.E.2d 865, 869 (Ind.Ct.App. 1994). This causal relationship is established "when a reasonably prudent person considers a risk to be incidental to the employment at the time of entering into it." *Id.; see also Construction Mgmt. & Design, Inc., v. Vanderweele,* 660 N.E.2d 1046, 1049 (Ind.Ct.App.1996), *trans. denied.*

■■■ Milledge argues that "as a matter of law, the causal nexus extends out to any conduct necessary for the employment, such as walking across a public street to where the employee's car is parked while at work...." Appellant's Brief p. 11 (citing *Clemans v. Wishard Mem. Hosp.,* 727 N.E.2d 1084 (Ind.Ct.App.2000), *trans. denied.*) We conclude, however, that Milledge misconstrues the nature of the causal nexus analysis.

The Oaks correctly distinguishes the case at bar from *Clemans,* in which an employee was injured when struck by a car "on a street which all parties undoubtedly contemplated she would cross in order to access the employee parking lot." *Id.* at 1089. We reasoned that Clemans was entitled to compensation under the Act because her *"exposure to the hazard which caused [her] injury was increased by reason of her employment." Id.* at 1091 (emphasis added) (citing *Segally v. Ancerys,* 486 N.E.2d 578, 581 (Ind.Ct.App.1985) and *K–Mart v. Novak,* 521 N.E.2d 1346, 1350 (Ind.Ct.App.1988)).

Here, Milledge was not exposed to any particular hazard by virtue of her work; her employer's parking lot was "clean, dry, level and clear of debris," and thus did not constitute a "hazard," her exposure to which was increased because of her employment. Consequently, the facts of this case lack the requisite causal nexus to establish that Milledge's injury "arose out of" her employment.

### II. Board's Findings of Fact

The substance of Milledge's argument on this issue is difficult to discern. She argues the Board "makes no specific findings as to the causal nexus between [her] required presence and duty to proceed into the building she cleaned and the duties or services she performed for the The Oaks[,]" and that the Board has improper-

ly introduced "negligence concepts" by "implying that the [e]mployer's lack of negligence in maintenance avoids *all* risks associated with employee travel over the surface." Appellant's Brief pp. 13–14.

We agree with both parties that the disposition of Milledge's claim does not turn on whether The Oaks was negligent. Rather, the Board's finding that the "surface of the parking lot, where the injury occurred, was clean, dry, level and free of debris, and nothing about [the] parking lot would have caused or contributed to [Milledge's] injury[,]" goes to the lack of a hazard and therefore the lack of a causal nexus, irrespective of any negligence on the part of The Oaks. Therefore, the Board's findings support the conclusion that Milledge's injury does not come within the "arising out of" requirement in the Act.

### III. Entitlement to Benefits

Again, Milledge has not presented a discernible argument with respect to the issue of whether the Board erred in concluding that she was not entitled to benefits under the Act. However, we will take this opportunity to apply the overlapping analysis regarding categories of "risks" to which employees are susceptible.

 "As a general rule, 'a risk is incidental to the employment if the risk involved is not one to which the public at large is subjected.'" *Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 25 (Ind.Ct. App.2001), *trans. pending* (quoting *Conway ex rel. Conway v. School City of East Chicago*, 734 N.E.2d 594, 599 (Ind.Ct.App. 2000) (citations omitted), *trans. denied* (2001)). Risks causing injury or death to an employee may be divided into three categories: 1) risks distinctly associated with the employment; 2) risks personal to the claimant; and 3) "neutral" risks that have no particular employment or personal character. *Roush*, 706 N.E.2d at 1114 (cit-

ing *Rogers*, 655 N.E.2d at 75). "[H]arms which arise in the second category, from risks personal to the claimant/employee, are universally noncompensable." *Rogers*, 655 N.E.2d at 75. This court's use of these three categories derives at least in part from a discussion found in 1 Larson, *Workmen's Compensation Law* § 6.50 (1985). As we noted in *K–Mart v. Novak:*

> Larson notes that the neutral category presents risk of loss problems because unfortunately the risk of loss of this category does not fall clearly upon either the industry or the employee. In answering the question of who should bear the burden for neutral risks Larson states,
>
>> "[T]he usual answer in the past has been to leave this loss on the employee, on the theory that he must meet the burden of proof of establishing affirmatively a clear causal connection between the conditions under which he worked and the occurrence of the injury. More recently, some courts have reasoned in the following vein: Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee personally there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life."
>
> 1 Larson, at §§ 7.00–7.30. Indiana appears to be among the trend of jurisdictions that place the burden on the industry for neutral risks.

521 N.E.2d 1346, 1349, n. 1 (Ind.Ct.App. 1988). In support of her argument that the Board erred by not awarding her benefits under the Act, Milledge argues in part that "there are no findings that any

personal risk of [hers] was involved...." Appellant's Brief p. 14. This logic is unavailing for several reasons.

First, it is not the Board's burden to "find" and make conclusions regarding every theory of recovery or coverage under the Act. It is the burden of the claimant to prove a right to compensation under the Worker's Compensation Act. *See Jablonski*, 575 N.E.2d at 1041. Second, even without a specific finding by the Board that Milledge was subjected to only a "personal" risk by walking in the parking lot, our conclusion that there is no causal relationship between her employment and her injury is simply a different way of saying the same thing. Injuries stemming from certain "personal" risks—such as those arising from non-work activities "which are reasonably necessary to their life, comfort or convenience, even though such acts are not technically acts of service"—*are* compensable. *Roush*, 706 N.E.2d at 1114. However, as we stated in *Roush*, "While some accidents involving such personal acts may be compensable under the worker's compensation statute as work-related injuries, *the claimants still carry the burden of demonstrating some causal connection between the death and the employment.*" *Id.* (emphasis added). Furthermore, for us to conclude that Milledge was injured because the parking lot presented a "neutral" risk would require facts different than those before us today, because the evidence does not support a finding that the parking lot posed *any* risk to Milledge, or any other person. The "slender" work connection to which Larson referred in his treatise is not present here. Thus, even under the tri-category "risk" analysis alluded to by Milledge, the Board did not err in denying her application for benefits.

### Conclusion

Unfortunately, Milledge injured her ankle and eventually suffered the amputation of her leg below the knee; moreover, the injury occurred on her employer's premises as she was on her way to commence her workday. Thus, it occurred "in the course of" her employment. However, the evidence supports the Board's finding that nothing about those premises or the nature of her work there would have caused or contributed to her injury. Thus, her injury did not "arise out of" her employment. Put another way, her injury was not even the result of a "neutral" risk to which she was exposed on her employer's premises. Thus, the Board did not err in denying her application for benefits under the Act.

Affirmed.

FRIEDLANDER, J., and VAIDIK, J., concur.

### ORDER

This Court having heretofore handed down its opinion in this cause marked Memorandum Decision, Not for Publication.

Comes now the Appellee, by counsel, and files herein Motion to Publish, requesting this Court to publish said decision for the reason that said decision clarifies a rule of law and involves a legal or factual issue of unique interest or substantial public importance.

The Court having examined said Motion and being duly advised, now finds that the same should be granted and this Court's opinion in this appeal should now be ordered published.

IT IS THEREFORE ORDERED that the Appellee's Motion to Publish is granted and this Court's opinion heretofore handed down in this cause on January 23,

2002, marked Memorandum Decision, Not for Publication, is now ordered published.

All Panel Judges Concur.