Phyllis MILLEDGE, Employee–Appellant,

v.

THE OAKS, a Living Center, Employer–Appellee.

Nos. 93S02–0206–EX–346, 93A02–0104–EX–233.

Supreme Court of Indiana.

March 14, 2003.

⊚⟶611

Ronald E. James, Benson, Pantello, Morris James & Logan, Fort Wayne, IN, Attorney for Appellant.

Robert D. Woods, Hunt Suedhoff Kalamaros, LLP, South Bend, IN, Attorney for Appellee.

RUCKER, Justice.

## Case Summary

This case presents the question of when and to what extent an injury resulting from an unexplained accident occurring in the workplace is compensable under Indiana's Worker's Compensation Act. We conclude that an unexplained accident represents a "neutral risk" and that the "positional-risk" doctrine applies. Under which, an injury is compensable if it would not have occurred but for the fact that the condition or obligation of the employment put the employee in the position at the time of injury.

## Facts and Procedural History

In 1983 Phyllis Milledge began working as a housekeeper at a nursing home known as "The Oaks, A Living Center." On October 21, 1994, she arrived at work shortly before 7 a.m. to begin her usual shift and parked her car in the nursing home parking lot. After closing the door upon exiting the car Milledge twisted her ankle. She proceeded to her job and completed the majority of her shift but the pain in her ankle prevented Milledge from finishing her duties. Leaving work early, Milledge went to the emergency room of a local hospital where x-rays revealed a sprained ankle. However, her ankle still bothered her a week after the injury. Among other things she suffered swelling in her right leg, and her right foot was severely discolored. In addition, a large blister had developed on her ankle, which her husband lanced on two occasions. Milledge returned to the hospital on November 6, 1994, where she was treated with antibiotics. On November 14, 1994, after surgical procedures failed to control the infection that had developed, Milledge's right leg was amputated below the knee. Subsequently, she was fitted with a prosthesis.

When The Oaks' worker's compensation insurance carrier denied her claim for benefits on March 3, 1995, Milledge filed an Application for Adjustment of Claim before the Worker's Compensation Board. On July 21, 1999, a hearing was conducted before a single-member hearing officer who denied the claim concluding in part:

> The record shows [Milledge's] injury may have occurred in the course of her employment, but fails to show any causal connection between her ankle sprain and her work duties for [The Oaks]. Thus, [Milledge's] injury did not arise out of and in the course of her employment

with [The Oaks] for the purposes of the [Indiana Worker's Compensation] Act. Appellant's App. at 9. In a vote of five to two, the Full Board adopted the single hearing officer's decision. The Court of Appeals affirmed in a published opinion. *See Milledge v. The Oaks*, 764 N.E.2d 230 (Ind.Ct.App.2002). Having previously granted transfer, we now reverse the decision of the Worker's Compensation Board and remand this cause for further proceedings.

## Discussion

■ The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind.Code § 22–3–2–2(a). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. *Outlaw v. Erbrich Prods. Co., Inc.*, 742 N.E.2d 526, 530 (Ind.Ct.App.2001); *Ind. Mich. Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999), *trans. denied*. An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. *Outlaw*, 742 N.E.2d at 530; *Tanglewood Trace v. Long*, 715 N.E.2d 410, 413 (Ind.Ct.App. 1999), *trans. denied*. Both requirements must be met before compensation is awarded, and neither alone is sufficient. *Conway v. Sch. City of East Chicago*, 734 N.E.2d 594, 598 (Ind.Ct.App.2000), *trans. denied*. The person who seeks Worker's Compensation benefits bears the burden of proving both elements. *Id.*

There is no question that the injury Milledge sustained in this case occurred in the course of her employment. She sprained her ankle on the parking lot of her employer while arriving for work at her regularly scheduled time. *See, e.g., Lawhead v. Brown*, 653 N.E.2d 527, 529 (Ind.Ct.App.1995) (employee entitled to compensation where injury occurred immediately after employee "clocked-out" but while present on employer-controlled parking lot); *Ward v. Tillman*, 179 Ind. App. 626, 386 N.E.2d 1003, 1005 (1979) ("[L]iability of employers has been extended beyond the immediate job site.... Accidents resulting from the ingress-egress of employees to a plant within workmen's compensation coverage [are] an employment-related risk."). Rather, the question is whether Milledge's injury arose out of her employment. Highlighting the Board's finding that the parking lot was "clean, dry, level and clear of debris" the Court of Appeals concluded the injury Milledge sustained did not arise out of her employment. *Milledge*, 764 N.E.2d at 234. This was so because the facts of this case lacked the requisite causal connection between the injury and the employment. *Id.*

Commenting on the causal connection necessary to show that an accidental injury arises out of employment, this Court has said "[the] nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs." *Wine–Settergren v. Lamey*, 716 N.E.2d 381, 389 (Ind.1999); *see also Blaw–Knox Foundry & Mill Machinery, Inc. v. Dacus*, 505 N.E.2d 101, 102–03 (Ind.Ct.App.1987) ("[A] connection is established when the accident arises out of a risk which a reasonably prudent person might comprehend as incidental to the work. It is not necessary that the injury should have been expected or foreseen."), *trans. denied*.

The "risk[s] incidental to employment" fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks of neither distinctly employment nor distinctly personal in character. *Roush*, 706 N.E.2d at 1114; *see also* 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* 4–1 (2002). Risks that fall within categories numbered one and three are generally covered under the Indiana Worker's Compensation Act. However risks personal to the claimant, those "caused by a pre-existing illness or condition unrelated to employment," are not compensable. *Kovatch v. A.M. Gen.*, 679 N.E.2d 940, 943 (Ind.Ct.App.1997), *trans. denied.*

Risks in category number one are those we intuitively think of as work connected. As Professor Larson explains, this category includes: "[a]ll the things that can go wrong around a modern factory, mill, mine, transportation system, or construction project ... and constitute the bulk of what not only the public but perhaps also the original drafters of compensation acts had in mind as their proper concern." Larson, *supra*, § 4.01, at 4–1—4–2. *See, e.g.*, *Control Techniques, Inc. v. Johnson*, 762 N.E.2d 104, 106 (Ind.2002) (electrician severely burned while measuring the voltage in a circuit breaker at a factory); *Mid–West Box Co. v. Hazzard*, 195 Ind. 608, 146 N.E. 420, 420–21 (1925) (employee's finger severed while operating machinery); *Turner v. Richmond Power & Light Co.*, 756 N.E.2d 547, 550 (Ind.Ct. App.2001) (employee electrocuted when excavating a sewer line after co-worker hit a buried power line), *trans. denied.* The underlying theme uniting these cases is that the injury sustained by the claimant was the result of conditions inherent in the work environment. In this case there was nothing inherent in The Oaks' parking lot

that either caused or contributed to Milledge's injury. As such her injury was not born out of a risk categorized as distinctly associated with employment.

As for category number two, the record does not show that Milledge's injury to her ankle was the result of a pre-existing illness or condition. To the contrary, although the Board made no finding on this point, uncontroverted evidence of record reveals that prior to the accident of October 21, 1994, Milledge experienced no problems with her right leg in general or to her ankle in particular. R. at 21, 32–33. The record also shows, that although Milledge suffered from diabetes for thirty years, at the time of the accident she was taking medication for her diabetes and she reported having no trouble with the illness; additionally, she noted that diabetes had never prevented her from fulfilling her job responsibilities. R. at 13, 24. In this case Milledge simply has no explanation of what caused her to twist her ankle; nor does the record give any indication of causation. The facts here are thus analogous to those cases involving injuries suffered by an employee as the result of an "unexplained" fall. As the Court of Appeals has observed:

> Workplace falls can result from either an employment, personal or neutral risk, or from a combination thereof. Some falls clearly result from risks personal to the employee; that is, they are caused by a pre-existing illness or condition, unrelated to employment. As a general matter, these "idiopathic" falls are not compensable. In contrast, some falls are "unexplained" in that there is no indication of causation. Most jurisdictions compensate such falls, classifying them as neutral risks.

*Kovatch*, 679 N.E.2d at 943 (citations omit-

ted).[1]

Courts have taken three approaches in addressing the "arising out of" element in unexplained fall cases. One approach requires the worker to rule out idiopathic causes for the fall. If the worker carries that burden, then an inference arises that the fall arose out of employment. Using this approach the Oregon Supreme Court has applied a "work-connection" test to determine whether an injury arises out of and in the course of employment. *Phil A. Livesley Co. v. Russ*, 296 Or. 25, 672 P.2d 337, 339, 340 (1983). The "work-connection" test focuses on whether the relationship between the injury and the employment is sufficient for the injury to be compensable. *Id.* at 339. If the "in the course of" element is fully met, then it will satisfy the "arising out of" element, provided the employee rules ˙ out idiopathic causes. *Id.* at 342. *See also Waller v. Mayfield*, 37 Ohio St.3d 118, 524 N.E.2d 458, 464–65 (1988) ("Where the course of employment test is fully met, where cause-in-fact cannot be directly established, and where the claimant has met his burden of eliminating idiopathic causes, we interpret the Workers' Compensation Act to allow the inference that the unexplained fall arose out of employment."). Although this is an attractive approach, it nonetheless places the employee in the position of attempting to prove a negative. This is not a burden we believe the employee should have to bear. *See, e.g., Town of Montezuma v. Downs*, 685 N.E.2d 108, 116 n. 9 (Ind.Ct.App.1997) ("To require the Downs to affirmatively prove that the pipeline was not inspected would require them to prove a negative, something which we refuse to do."), *trans. denied; Jackson v. Warrum*, 535 N.E.2d 1207, 1218 (Ind.Ct.App.1989)

(describing as "impossible" the "burden of proving a negative fact"). We therefore decline to adopt this view.

A second approach leaves the burden on the employee to show a causal connection between the injury and the employment. This is the most difficult burden to meet when an injury occurs without explanation. And although it is especially well suited for injuries that result from risks distinctly associated with employment, as discussed in more detail below, it is problematic for risks that are neither distinctly employment related nor distinctly personal in character. This is essentially the approach adopted by the Court of Appeals in this case.

A third approach involves applying the "positional risk test" also referred to as the "positional risk doctrine." *See Smith v. Bob Evans Farms, Inc.*, 754 N.E.2d 18, 26 n. 1 (Ind.Ct.App.2001) (observing that under Indiana law "the positional risk doctrine is generally applied to neutral risks"), *trans. denied; accord K–Mart Corp. v. Novak*, 521 N.E.2d 1346, 1348–49 (Ind.Ct.App.1988), *trans. denied.* Under this doctrine "[a]n injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured." Larson, *supra*, § 3.05, at 3–6. This but for reasoning is the foundation of the positional risk doctrine, under which if the "in the course of" employment element is met, then there is a rebuttable presumption that the injury "arises out of" employment. Although similar to the "work connection" test mentioned above, here the burden is on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant.

---

**1.** "[M]eaning by 'neutral' neither personal to the claimant nor distinctly associated with the employment." Larson, *supra*, § 3.05, at 3–6.

The positional risk doctrine is generally applied in those instances where injuries result from risks that are categorized as neutral. *See, e.g., Logsdon v. ISCO Co.*, 260 Neb. 624, 618 N.W.2d 667, 673–74, 675 (2000) (noting that Nebraska applies the positional risk doctrine when faced with a neutral risk such as an unexplained fall and under the doctrine a claimant is not required to rule out idiopathic causes, but where there is at least some evidence of a possibility of a personal or idiopathic factor contributing to the fall, the fall is not properly categorized as a purely unexplained fall); *Cartwright v. Onondaga News Agency*, 283 A.D.2d 837, 728 N.Y.S.2d 105, 106 (N.Y.App.Div.2001) (explaining that an unexplained fall that occurs in the course of employment is presumed to arise out of employment in the absence of substantial evidence to the contrary).

We acknowledge, as has the Court of Appeals, that neutral risks present risk of loss problems. *See Milledge*, 764 N.E.2d at 235 (citing *K–Mart*, 521 N.E.2d at 1349 n. 1). This is so because the risk does not fall clearly upon the employer or the employee. *Id.* Responding to the question of who should bear this risk, Professor Larson observes:

> [T]he usual answer in the past has been to leave this loss on the employee, on the theory that he or she must meet the burden of proof of establishing affirmatively a clear causal connection between the conditions under which the employee worked and the occurrence of the injury. More recently, some courts have reasoned in the following vein: Either the employer or the employee must bear the loss; to show connection with the employment, there is at least the fact that the injury occurred while the employee was working; to show connection with the employee there is nothing; therefore, although the work connection is slender, it is at least stronger than any connection with the claimant's personal life.

Larson, *supra*, § 4.03, at 4–3.

We believe the positional risk doctrine is the appropriate analytical tool for resolving questions concerning injuries that result from neutral risks. It has been adopted by a majority of jurisdictions that have spoken on the subject.[2] And it is consistent with the underlying purpose of

---

**2.** *See, e.g., Circle K v. Indus. Comm'n of Ariz.*, 165 Ariz. 91, 796 P.2d 893, 898 (1990) (expressly adopting the positional-risk doctrine); *Little Rock Convention & Visitors Bureau v. Pack*, 60 Ark.App. 82, 959 S.W.2d 415, 419 (1997) (holding that when an employee suffers an injury from an unexplained fall while the employee is on the job and performing the duties of his employment that injury is eligible for compensation under the Worker's Compensation Act); *Horodyskyj v. Karanian*, 32 P.3d 470, 477 (Colo.2001) (expressly adopting the positional-risk doctrine); *Johnson v. Publix Supermarkets*, 256 Ga.App. 540, 568 S.E.2d 827, 829 (2002) (same), *cert. denied; Mayo v. Safeway Stores, Inc.*, 93 Idaho 161, 457 P.2d 400, 402 (1969) (same); *Hayes v. Gibson Hart Co.*, 789 S.W.2d 775, 777 (Ky. 1990) (documenting "a long line of Kentucky cases" recognizing the positional risk doctrine); *Mulready v. Univ. Research Corp.*, 360 Md. 51, 756 A.2d 575, 583 (2000) (observing that the rule adopted by the Court is "substantially" the positional risk test); *Stanley Baran's Case*, 336 Mass. 342, 145 N.E.2d 726, 727 (1957) (holding that in determining whether an accident "arose out of" employment the issue is "whether [the employee's] employment brought him in contact with the risk that in fact caused his injuries."); *Whetro v. Awkerman*, 383 Mich. 235, 174 N.W.2d 783, 786 (1970) (holding that where the employment of the injured employees "was the occasion of the injury" the injuries "arose out of" employment); *United Fire & Cas. Co. v. Maw*, 510 N.W.2d 241, 244 (Minn.Ct.App.1994) (noting that Minnesota applies the positional risk doctrine when the general public and the employee are equally subject to the risk that caused the injury); *Johnson v. Roundtree*, 406 So.2d 810, 810–11 (Miss.1981) (affirming an award of compensation pursuant to the posi-

the Worker's Compensation Act: to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law. Worker's compensation is for the benefit of the employee, and the Act should "be liberally construed ... so as not to negate the Act's humane purposes." *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 427 (1973).

In this case the injury to Milledge's ankle is without explanation. It is thus classified as a neutral risk in that the cause of the injury is neither personal to Milledge nor distinctly associated with her employment. The injury would not have occurred but for the fact that the conditions and obligations of her employment placed Milledge in the parking lot where she was injured. In turn, The Oaks has not carried its burden of demonstrating that this unexplained accident, which precipitated the ankle injury, was the result of idiopathic causes. Milledge is thus enti-

tled to compensation under the Indiana Worker's Compensation Act.

This does not however end our analysis. Milledge sought worker's compensation not for her ankle injury alone, but also, and primarily, for the disability arising from the injury including the surgery that led to the amputation of her leg. Whether Milledge was entitled to such compensation was fiercely contested before the single-member hearing officer.[3] However, determining that Milledge failed to show any causal connection between her ankle injury and her employment, neither the hearing officer nor the full Board ever reached the question of whether Milledge's infection and subsequent amputation were causally connected to her ankle injury. Therefore this cause is remanded to the Board for consideration of this issue.

### Conclusion

 We conclude that an injury resulting from an unexplained accident falls

---

tional risk doctrine); *Mule v. N.J. Mfrs. Ins. Co.*, 356 N.J.Super. 389, 812 A.2d 1128, 1133 (2003) (expressly adopting positional risk doctrine); *Ensley v. Grace*, 76 N.M. 691, 417 P.2d 885, 888 (1966) (holding that where an employee is fatally injured in an unexplained assault there is a rebuttable presumption that the employee's death arose out of the employment); *Turner v. B Sew Inn*, 18 P.3d 1070, 1076 (Okla.2000) (holding that "arising from on premises accidents—even those which under other facts might present a 'neutral' risk, i.e. weather conditions—are compensable"); *Workmen's Comp. Appeal Bd. v. Borough of Plum*, 20 Pa.Cmwlth. 35, 340 A.2d 637, 640 (1975) (explaining that in worker's compensation the causation element required by the phrase "and related thereto" that appears in the worker's compensation act can be satisfied if "but for" the employment the employee would not have been on the job and thus would not have been injured); *Steinberg v. S.D. Dep't of Military & Veterans Affairs*, 607 N.W.2d 596, 604 (S.D.2000) (expressly adopting positional risk doctrine); *Walters v. Am. States Ins. Co.*, 654 S.W.2d 423, 426 (Tex. 1983) (listing the circumstances under which

positional risk doctrine has been applied); *Clodgo v. Rentavision, Inc.*, 166 Vt. 548, 701 A.2d 1044, 1046 (1997) (expressly adopting positional risk doctrine); *Am. Mfrs. Mut. Ins. Co. v. Hernandez*, 252 Wis.2d 155, 642 N.W.2d 584, 591 (2002) (same).

3. The record shows for example that Milledge introduced a letter from Dr. William H. Couch, the orthopedic surgeon who amputated her leg below the knee. After setting forth the patient's history, the letter continued in part: "It would be therefore my unequivocal statement that given the facts presented to me it would appear that the diabetes was a complicating factor, but the ankle injury that she sustained was the instigating fact that led to her subsequent infection, and multiple surgeries eventuating in an amputation." Appellant's App. at 16. By contrast The Oaks introduced a letter from Dr. John Cavanaugh which provided in part: "I believe that the patient's ankle sprain that she sustained in the parking lot was necessary but not sufficient for the development of gangrene and subsequent need for amputation." Appellant's App. at 20.

under the category of a neutral risk, one neither distinctly personal to the claimant nor distinctly associated with the employment. We conclude also that in the case of a neutral risk, the positional risk doctrine applies. As applied in this case, Milledge would not have been at the place where she injured her ankle injury but for the duties of her employment. Consequently, a presumption arises that her injury "arose out of" employment. Because The Oaks presented no evidence that the injury was the result of idiopathic causes, it has not rebutted this presumption. On this issue, we reverse the judgment of the Worker's Compensation Board. However, issues still remain as to whether Milledge's other medical problems including the amputation of her leg were causally connected to the ankle injury. Accordingly, on this issue we remand this cause to Worker's Compensation Board for further proceedings.

Judgment reversed and cause remanded.

SHEPARD, C.J., and DICKSON, SULLIVAN and BOEHM, JJ., concur.