**GREENBERG NEWS NETWORK,**
**Appellant–Defendant,**

v.

**Elaina FREDERICK, Appellee–**
**Plaintiff.**

**No. 93A02–0211–EX–952.**

Court of Appeals of Indiana.

Aug. 19, 2003.

Ty M. Craver, Hill Fulwider McDowell Funk & Matthews, Indianapolis, IN, Attorney for Appellant.

Randall M. Klezmer, Epstein & Frisch, Indianapolis, IN, Attorney for Appellee.

## OPINION

BAILEY, Judge.

### Case Summary

Greenberg News Network ("Greenberg") appeals the decision of the full Indiana Worker's Compensation Board ("Board") concluding that Elaina Frederick ("Frederick") was injured in the course of her employment with Greenberg and is entitled to worker's compensation benefits. We affirm.

### Issue

The issue presented is whether the Board's decision is contrary to law.

### Facts and Procedural History

Greenberg is a Georgia company in the business of selling computer software. Greenberg does not maintain an office in Indianapolis, but employs sales representatives in Indianapolis.

On January 15, 1999, Frederick, who was employed by Greenberg as a sales representative, traveled to physicians' offices to make sales calls. After completing a call, Frederick walked toward a parking lot where her vehicle was parked, traversing a snow-covered sidewalk adjacent to the physician's office. On the sidewalk, Frederick encountered a gentleman who had fallen on the sidewalk. Frederick extended her hand toward the gentleman, slipped, and twisted her ankle. Frederick received medical treatment and eventually underwent surgery on her ankle, during which three screws were inserted into the ankle.[1] On May 29, 2001, Dr. Karl Raynor, a podiatrist, released Frederick at maximum medical improvement and assigned an impairment rating of 50% to her right lower extremity. Frederick's worker's compensation claim was denied and Frederick filed an Application for Adjustment of Claim with the Board.

A single hearing member heard the matter on March 6, 2002. Prior to the hearing, the parties submitted their Stipulations and Statement of Disputed Issues as follows:

1. Elaina Frederick was an employee of Greenberg News Networks[2] on January 15, 1999.

2. On January 15, 1999, Ms. Frederick injured her right foot and ankle while attempting to assist [an] elderly gentleman who had fallen on a snow covered sidewalk after making

---

1. Frederick's ankle was re-injured during an incident on January 23, 1999, when someone grabbed her ankle.

2. The Stipulations alternately refer to the Appellant as Greenberg News Networks and Greenberg News Network.

a sales call at 8424 Naab Road in Indianapolis.

3. Ms. Frederick did not miss any time off of work at Greenberg News Network or her subsequent employer, Sharpe Ford, as a result of the injury sustained on January 15, 1999.

4. The incident was reported by Ms. Frederick to Lara Kuhlman of Greenberg News Networks human resource department on February 3, 2002.

5. On May 14, 1999, Ms. Frederick filed her Application for Adjustment of Claim with the Board.

6. On May 29, 2001 Dr. Karl Raynor of the Foot & Ankle Institute placed Ms. Frederick at maximum medical improvement and assigned her a 50% impairment rating to her right foot.

## DISPUTED ISSUES AT HEARING

1. Whether Ms. Frederick injured her right foot and ankle in the course and scope of her employment with Greenberg News Networks on January 15, 1999.

2. Whether Ms. Frederick injured her right foot and ankle in the course and scope of her employment with Greenberg News Networks on January 23, 1999.

3. Whether Ms. Frederick is barred by the applicable statute of limitations from litigating her alleged January 23, 1999 injury.

4. Whether Greenberg News Networks must pay Ms. Frederick's medical expenses related to treatments and surgery to her right foot and ankle.

5. Whether Greenberg News Networks must pay Ms. Frederick's 50% im-pairment rating to her right foot assigned by Dr. Karl Raynor.

(Tr. 14–15.)

On March 11, 2002, the single hearing member issued an award in Frederick's favor, ordering Greenberg to pay $15,000 as compensation for a 17.5 degree of impairment for Frederick's 50% permanent partial impairment to her lower right extremity, and ordering Greenberg to pay statutory medical expenses and attorney fees incurred by Frederick. On October 22, 2002, the matter was heard by the full Board. On November 8, 2002, the Board, by a six to one margin, ordered Greenberg to pay Frederick $15,000, statutory medical bills and attorney fees. Greenberg now appeals.

### Discussion and Decision

#### A.   Standard of Review

Indiana Code Section 22–3–2–2 requires employers to provide their employees with "compensation for personal injury or death by accident arising out of and in the course of the employment[.]"

Indiana Code Section 22–3–4–8 provides that "[a]n award by the full board shall be conclusive and binding as to all questions of the fact, but either party . . . may . . . appeal to the court of appeals for errors of law under the same terms and conditions as govern appeals in ordinary civil actions." Upon appeal from a finding of the Board, this Court employs a deferential standard. *Shultz Timber v. Morrison*, 751 N.E.2d 834, 836 (Ind.Ct.App. 2001), *trans. denied.* We are bound by the Board's findings of fact and may not disturb its determination unless the evidence is undisputed and leads undeniably to a contrary conclusion. *Id.*

The Board is required to make findings that reveal its analysis of the evidence and are specific enough to permit

intelligent review of its decision. *Id.* We first review the record to determine if there is any competent evidence of probative value to support the Board's findings, and then examine the findings to see if they are sufficient to support the decision. *Id.* We will not reweigh the evidence or assess witness credibility, but will consider only the evidence most favorable to the award, together with the reasonable inferences flowing therefrom. *Id.*

### B. Analysis

Greenberg contends that the Board's decision is contrary to law because Frederick's injury did not arise out of or in the course of her employment. Specifically, Greenberg challenges Findings of Fact and Conclusions of Law 1, 3, and 5 as erroneous.

#### Finding and Conclusion One

The Board found as follows:

1. It is further found that the plaintiff was approaching a gentlemen who had fallen on the sidewalk and that such sidewalk was the direct route to her car. The gentlemen [sic] who had fallen down was on his knees and the plaintiff had not touched him at the time of the fall.[3]

(App.2.)

■ Greenberg deems the timing of Frederick's accident as it relates to an offer of assistance to the fallen gentleman crucial to a determination of whether Frederick's injury arose out of and in the course of her employment. In Green-

berg's view, if Frederick was actually assisting the gentleman, as opposed to attempting or intending to assist him, her accident and injury did not occur in the course of her employment.

Greenberg claims that "none of the evidence supports the Board's finding that Frederick was injured while proceeding towards the gentleman who had fallen" and "all of the evidence supports the opposite finding that Frederick slipped while she assisted the gentleman to his feet." Appellant's Brief at 4. Greenberg relies upon Frederick's testimony of March 6, 2002 as follows:

> I saw that a gentlemen [sic] had fallen down and as I approached him I reached down to give him my hand to help him get a hand up and when I was reaching down my foot twisted.

(Tr. 5.) Greenberg emphasizes the undisputed fact that Frederick offered her hand before twisting her ankle.[4] We cannot discern how this testimony contradicts the Board's finding that Frederick was "approaching" the gentleman and "had not yet touched him." (App.2.) Too, prior to the single-member hearing, Greenberg stipulated to the following fact: "On January 15, 1999, Ms. Frederick injured her right foot and ankle while attempting to assist [an] elderly gentleman who had fallen on a snow covered sidewalk after making a sales call at 8424 Naab Road in Indianapolis." (App.8.) Greenberg points to no testimony or stipulation that Frederick actually rendered assistance, such that the Board

---

3. Greenberg contends that the Board erred "in finding that Elaina Frederick's injury occurred immediately prior to starting to assist a gentleman who had fallen." Brief of Appellant at 1. The Board's Findings of Fact and Conclusions of Law did not include this language. Rather, the phrase "immediately prior to starting to help" appears in the Board's "Summary of Evidence." We thus construe

Greenberg's challenge as directed toward the Finding incorporating similar language.

4. In her deposition, Frederick stated: "I was walking to the sidewalk or on the sidewalk. A gentleman had slipped and fallen. And I reached down to help him up, and my foot just sort of twisted a little bit. I didn't actually fall down." (Tr. 34.)

could conclude that "Frederick slipped while she assisted the gentleman to his feet," as Greenberg urges. Appellant's Brief at 4. As such, we may not disturb the Board's finding of fact to substitute the finding urged by Greenberg.

### Finding and Conclusion Four

The Board found as follows:

4. It is further found that based upon the facts and circumstances of this case the plaintiff did suffer an accidental injury arising out of and in the course of her employment.

(App.2–3.)

■ An injury arises out of employment when there is a causal relationship between the employment and the injury. *Muncie Ind. Transit Auth. v. Smith*, 743 N.E.2d 1214, 1216 (Ind.Ct.App.2001). Ultimately, the issue of whether an employee's injury arose out of and in the course of his employment is a question of fact to be determined by the Board. *Conway ex rel. Conway v. Sch. City of East Chicago*, 734 N.E.2d 594, 597 (Ind.Ct.App.2000), *trans. denied.*

■ For an injury to be compensable under the Indiana Worker's Compensation Act ("the Act"), it must both arise "out of" and "in the course of" the employment. *Ind. Michigan Power Co. v. Roush*, 706 N.E.2d 1110, 1114 (Ind.Ct.App.1999). Here, the Board found that Frederick had established both elements, and that her injury was compensable under the Act.

Recently, in *Milledge v. Oaks*, 784 N.E.2d 926 (Ind.2003), the Indiana Supreme Court determined that an injury is compensable "if it would not have occurred but for the fact that the condition or obligation of the employment put the employee in the position at the time of the injury." *Id.* at 928. Milledge, the claimant, arrived for her shift at a nursing home,

parked her vehicle, and twisted her ankle as she exited. *Id.* The Court observed that the circumstances presented no question of whether the injury occurred "in the course" of Milledge's employment, but rather the question was whether the injury "arose out of" her employment. *Id.* at 929.

The requisite causal connection between the injury and the employment is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs. *Id.* A connection is established when the accident arises out of a risk that a reasonably prudent person might comprehend as incidental to the work, and it is not necessary that the injury should have been foreseen. *Id.*

Risks incidental to employment fall into three categories: (1) risks distinctly associated with employment, (2) risks personal to the claimant, and (3) risks neither distinctly employment nor distinctly personal in character. *Id.* at 930. The second category, risks personal to the claimant, caused by a pre-existing illness or condition unrelated to employment, are not compensable. *Id.* The first category of risks are those intuitively perceived as "work connected," e.g., machine-severed fingers, employee electrocution. *Id.* These risks, along with the risks of the third category, are generally covered under the Act. *Id.* The Court classified Milledge's injury as a "neutral" risk in that the cause of the injury was neither personal nor distinctly associated with her employment. *Id.* at 933. In such cases, the positional risk doctrine applies, as the Court explained:

We believe the positional risk doctrine is the appropriate analytical tool for resolving questions concerning injuries that result from neutral risks. It has

been adopted by a majority of jurisdictions that have spoken on the subject. And it is consistent with the underlying purpose of the Worker's Compensation Act: to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law. Worker's compensation is for the benefit of the employee, and the Act should "be liberally construed ... so as not to negate the Act's humane purposes." *Frampton v. Cent. Ind. Gas Co.*, 260 Ind. 249, 297 N.E.2d 425, 427 (1973).

In this case the injury to Milledge's ankle is without explanation. It is thus classified as a neutral risk in that the cause of the injury is neither personal to Milledge nor distinctly associated with her employment. The injury would not have occurred but for the fact that the conditions and obligations of her employment placed Milledge in the parking lot where she was injured. In turn, The Oaks has not carried its burden of demonstrating that this unexplained accident, which precipitated the ankle injury, was the result of idiopathic causes. Milledge is thus entitled to compensation under the Indiana Worker's Compensation Act.

*Id.* at 932–33.

Likewise, here, the risk is of the third category. Frederick testified in her deposition that she had no problems with her right ankle prior to January 15, 1999. Frederick was in the process of returning to her parked vehicle, which she had driven to facilitate making sales calls on Greenberg's behalf, when she slipped. Apparently, Frederick extended her hand

from altruistic motives rather than a mere need to clear her path of an obstacle to permit her work to continue. However, although Frederick admittedly had a hand extended toward a fallen pedestrian when she fell, she further testified that she would have slipped anyway because of the snow on the sidewalk. As such, the injury was not distinctly associated with employment, but is unexplained in that it may have been caused by snow or may have been caused by loss of balance when reaching out.

In the case of injury from a "neutral" risk, if the "in the course of" employment element is met, the "positional risk test" applies and the burden is on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant. *Id.* at 931.[5] Greenberg did not carry this burden. The Board properly concluded that Frederick's injury arose out of her employment.

### *Finding and Conclusion Five*

The Board found as follows:

5. It is further found that the plaintiff did not deviate in her route towards her car nor increase her risk of injury by proceeding towards the person who fell down in an effort to assist him.

(App.3.) Greenberg argues that Frederick deviated from her route and thus was no longer acting "in the course of her employment." An accident occurs in the course of employment when it happens within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in some-

---

5. The claimant seeking Worker's Compensation benefits bears the burden of establishing that the accident arose "out of" and "in the course of" the employment. *Id.* at 929. However, under the positional risk doctrine, where the "in the course of" employment element is met, there is a rebuttable presumption that the injury "arises out of" employment. *Id.* at 931.

thing incidental thereto. *Outlaw v. Erbrich Prods. Co., Inc.,* 742 N.E.2d 526, 530 (Ind.Ct.App.2001).

Frederick testified that she was making sales calls on the day of her injury. After having completed one call, she was returning to her vehicle when the accident occurred. When questioned as to whether she deviated from her route, Frederick responded: "It was the same route that I would have walked regardless." (Tr. 12.)

There is evidence from which the Board could conclude that Frederick was injured within her period of employment, at a place where she could reasonably be, and while fulfilling her employment duties or something incidental thereto, i.e., returning to her vehicle in the course of making sales calls. As such, the Board properly found that Frederick's injury arose in the course of her employment.

## Conclusion

The findings of the Board are supported by probative evidence, and the findings support the Board's conclusion that Frederick's injury arose out of and in the course of her employment with Greenberg. Accordingly, the Board's decision is not contrary to law.

Affirmed.

KIRSCH and VAIDIK, JJ., concur.