Henry HOLLAND, Appellant–Plaintiff,

v.

COAST MIDWEST TRANSPORT,
Appellee–Defendant.

No. 93A02–0212–EX–1028.

Court of Appeals of Indiana.

June 4, 2003.

Richard R. Fox, Steven A. Gustafson, Fox & Cotner, New Albany, IN, Attorneys for Appellant.

Bruce J. Alvarado, Orfanos & Alvarado, LLC, Indianapolis, IN, Attorney for Appellee.

## OPINION

KIRSCH, Judge.

Henry Holland appeals the denial of his claim for worker's compensation benefits by the Indiana Worker's Compensation Board. He contends that the Board erred in concluding that his injury did not arise out of his employment.

We vacate and remand.

### FACTS AND PROCEDURAL HISTORY

Holland worked as a truck driver for Coast Midwest Transport ("Coast"). On the day of his injury, he was working at a Coast facility in North Carolina. While at the Coast office, an employee asked Holland for some information related to his duties. He returned to his truck, which was parked in the parking lot, to retrieve

the information. After he exited the truck, he decided to return to verify that he had all of the information Coast needed. As he turned back towards the truck, Holland injured his knee. Doctors later determined that Holland had an injury to his anterior cruciate ligament.

Holland filed a claim for worker's compensation benefits. The hearing officer concluded that Holland's injury did not arise out of his employment and denied his claim. Holland appealed to the full Board, which affirmed the hearing officer's decision. Holland now brings this appeal.

## DISCUSSION AND DECISION

■ Holland contends that the Board's conclusion that his injury did not arise out of his employment is erroneous.

The Worker's Compensation Act provides for compensation to employees who receive injuries on the job. *See* IC 22–3–3–10. By definition, the Act applies only if the employee has received an injury. IC 22–3–6–1 provides: " 'Injury' and 'personal injury' mean only injury by accident arising out of and in the course of the employment and do not include a disease in any form except as it results from the injury." Here, the only matter in contention is the Board's conclusion that Holland's injury did not "arise out of" his employment.

■ The words "arising out of" refer to the origin or cause and are descriptive of the accident's character. *Conway ex rel. Conway v. School City of East Chicago,* 734 N.E.2d 594, 598 (Ind.Ct.App.2000); *Kovatch v. A.M. General,* 679 N.E.2d 940, 943 (Ind.Ct.App.1997). An injury arises out of employment when there is a causal relationship between the employment and the injury. *Outlaw v. Erbrich Prods. Co., Inc.,* 777 N.E.2d 14, 25 (Ind.Ct.App.2002); *Clemans v. Wishard Memorial Hosp.,* 727 N.E.2d 1084, 1087 (Ind.Ct.App.2000); *K–Mart Corp. v. Novak,* 521 N.E.2d 1346,

1348 (Ind.Ct.App.1988). The issue of whether an employee's injury arose out of and in the course of his employment is a question of fact to be determined by the Board. *Outlaw,* 777 N.E.2d at 25; *Novak,* 521 N.E.2d at 1348.

Until recently, the law in Indiana was that the party seeking benefits always bore the burden to prove that his or her injury arose out of and in the course of employment. *See Outlaw,* 777 N.E.2d at 25; *Conway,* 734 N.E.2d at 598. In *Milledge v. The Oaks,* 784 N.E.2d 926 (Ind. 2003), however, our supreme court altered the burden of proof in some worker's compensation cases. In that case, a claimant/employee appealed the denial of her claim for worker's compensation benefits. The claimant, a diabetic, twisted her ankle in the employer's parking lot when she arrived at work for her shift. Her ankle hurt progressively more throughout her shift, and she eventually left work early and went to a hospital emergency room for treatment. Hospital x-rays revealed only a severe sprain; however, her condition worsened and ultimately she was required to have her leg amputated below the knee. The employee filed a worker's compensation claim with the Board. The employer argued that the employee's injury did not arise out of her employment. The orthopedic surgeon who treated the claimant averred that the claimant's diabetes was a complicating factor, but the ankle injury that she sustained was the instigating fact that led to the amputation. The employer presented a report from another medical expert that the ankle injury was necessary, but not a sufficient cause, of the subsequent need for amputation.

The Board entered its judgment, determining that the claimant injured her ankle when either stepping down or twisting while turning to close the car door after

arriving at work but before beginning her work and that the asphalt surface of the parking lot, where the injury occurred, was clean, dry, level and free of debris, and nothing about it would have caused or contributed to the claimant's injury. It concluded that the claimant failed to show any causal connection between her injury and her work duties and her injury therefore·did not arise out of her employment.

On appeal, we affirmed the Board's decision. We explained that although the claimant injured her ankle on her employer's premises as she was on her way to commence her workday and therefore "in the course of" her employment, the evidence supported the Board's finding that nothing about those premises or the nature of her work there would have caused or contributed to her injury. Thus, we concluded that her injury did not "arise out of" her employment. "Put another way, her injury was not even the result of a 'neutral' risk to which she was exposed on her employer's premises." *Milledge v. The Oaks,* 764 N.E.2d 230, 236 (Ind.Ct. App.2002), *trans. granted, vacated by* 774 N.E.2d 518. Thus, we concluded that the Board did not err in denying her application for benefits under the Act.

On transfer, our supreme court explained that risks incidental to employment fall into three categories: 1) risks distinctly associated with employment; 2) risks personal to the claimant; and 3) risks of neither distinctly employment nor distinctly personal character. It then explained that while risks in the first and third categories may be covered by worker's compensation, those personal to the claimant, caused by a pre-existing illness or condition unrelated to employment, are not compensable. The court then examined each category and analyzed whether the claimant's injury fell within it. For the first category, the court explained that the injury must be inherent in the work environment. It concluded that the claimant's injury, suffered while walking in the employer's parking lot, was not of this variety. The court then looked at the second category, risks personal to the claimant, and concluded that the evidence did not show that the claimant's ankle injury was the result of a pre-existing illness or injury. Although the claimant had suffered from diabetes for thirty years, she was taking medication for the illness and had no acute symptoms. The court concluded that the record simply did not give any indication as to what caused the claimant to twist her ankle. Accordingly, the court next looked to the approach used in various jurisdictions to treat such "unexplained" injuries. After comparing the various approaches, it concluded that Indiana should employ the positional risk doctrine in such cases. Under this doctrine,

> "an injury arises out of the employment if it would not have occurred *but for* the fact that the conditions and obligations of the employment placed claimant in the position where he was injured. This but for reasoning is the foundation of the positional risk doctrine, under which if the 'in the course of' employment element is met, then there is a rebuttable presumption that the injury 'arises out of' employment.... [H]ere the burden is on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant.
>
> The positional risk doctrine is generally applied in those instances where injuries result from risks that are categorized as neutral."

*Id.* at 931–32 (quotations and citation omitted).

Applying this doctrine to the case before it, the court found that the claimant's injury was the result of a neutral risk neither

personal to her nor distinctly associated with her employment. The court noted that the injury would not have occurred but for the fact that the claimant's employment obligations placed her in the parking lot when she was injured. It then concluded that the employer had not carried its burden of demonstrating that the unexplained accident was the result of a condition personal to the claimant. It therefore held that the claimant was entitled to worker's compensation benefits.

Here, the Board found that Holland injured his knee when he went to his truck to retrieve information needed by his employer. After exiting his truck, he turned back toward the truck to verify that he had all of the necessary information and injured his knee. Holland's testimony supports this finding. It found:

> "Like an employee with a cardiac condition who suffers a heart attack at work, the issue is whether the demands of Holland's employment created a risk of injury; that is, whether his duties presented or created unique conditions exposing him to injury such as high heat or unusual or excessive weights."

*Appellant's Appendix* at 4. Because the Board concluded that Holland was not exposed to any unique risks by the requirements of his work and his injury could have happened anywhere, it determined that Holland's injury did not arise out of his employment. Using the risk category analysis, we find that Holland's injury while walking in his employer's parking lot, as in *Milledge*, is not a risk intrinsic to his employment. Thus, Holland's injury is not a result of a risk that falls within the first category. Further, we do not believe that Holland's injury was the result of a risk personal to him, the second category mentioned in *Milledge*. Although Holland had a previous ACL injury, the evidence showed no connection between that injury

and the instant one. The evidence showed that the previous ACL repair surgery on his right knee, performed over ten years prior to this injury, was successful, and that Holland subsequently resumed normal activities, including engaging in sports, without incident. In fact, Holland had suffered no symptoms with regard to his knee for at least five years prior to this injury. Like the diabetic claimant in *Milledge*, Holland may have had an underlying condition that acted as a complicating factor in his injury, but it alone was not a sufficient cause of the injury at issue. Thus, there is no evidence supporting the conclusion that Holland's injury was the result of a risk personal to him. Rather, the record gives no indication of what caused Holland to twist his knee. Accordingly, we conclude that Holland's injury was the result of a risk that was neither of a distinctly personal nor employment nature, a "neutral risk," and the positional risk doctrine, as explained in *Milledge*, applies.

The Board's decision was based on the principle that Holland had the burden of proof with regard to whether his injury "arose out of" his employment. However, the *Milledge* opinion subsequently clarified that in cases such as this, the claimant enjoys a rebuttable presumption that the injury arose out of his or her employment. Thus, Coast bears the burden of presenting evidence to rebut this presumption. We therefore remand to the Board for a new hearing consistent with this decision.

Vacated and remanded.

MATTINGLY–MAY, J., and MATHIAS, J., concur.