912 N.E.2d 403 (2009)
Annette BAKER, Appellant-Plaintiff,
v.
HEARTLAND FOOD CORPORATION, Appellee-Defendant.
No. 93A02-0904-EX-307.
Court of Appeals of Indiana.
August 28, 2009.
Daniel J. McGlone, McGlone Law, Terre Haute, IN, Attorney for Appellant.
Christopher H. Cross, Skiles Detrude, Indianapolis, IN, Attorney for Appellee.

OPINION
NAJAM, Judge.

STATEMENT OF THE CASE
Annette Baker filed an application for adjustment of claim with the Worker's Compensation Board of Indiana (the "Board") against her employer, Heartland Food Corporation ("Heartland"). A Single Hearing Judge denied her claim, concluding that Baker had not established that her personal injury arose out of and in the *404 course of her employment. Baker petitioned the full Board, which affirmed the Single Hearing Judge's decision. On appeal, Baker contends that the Board erred when it denied her claim. Applying the positional risk doctrine, we hold that Baker met the initial burden to show that her personal injury occurred in the course of employment, that the burden of proof shifted to Heartland, and that Heartland failed to rebut the presumption that the injury arose out of employment. Accordingly, Baker is eligible for worker's compensation.
We reverse and remand with instructions.

FACTS AND PROCEDURAL HISTORY
Heartland owns a Burger King restaurant in Terre Haute. At approximately 9:15 a.m. on August 3, 2007, Baker, an employee at the restaurant, began stocking her work station with hamburger meat patties and hamburger buns. At one point, she bent forward and she felt and heard a "pop" in her spine.[1] Baker immediately felt severe pain in her lower back, and she sought emergency medical treatment at Union Hospital.
Baker was diagnosed with a massive herniated disc at L2-3 bilaterally, and she underwent two surgeries. Baker spent approximately three weeks in the hospital in recovery. After she returned home, Baker could not resume her normal physical activities, and she did not return to work.
Baker's medical history includes a herniated disc at L5-S1, requiring surgery, in 1996 or 1997. And Baker has suffered "chronic back problems." Appellant's App. at 91. But Baker had never complained of back pain at work prior to August 3, 2007, and she was active. Baker's hobbies at the time of the injury at Burger King included gardening and horseback riding.
Baker initially denied that the herniated disc was work-related, but she subsequently filed an application for adjustment of claim alleging that her injury was work-related. Heartland maintained that her injury was due to "an idiopathic relapse of a pre-existing condition[.]" Transcript at 69. Following a hearing, the Single Hearing Judge denied Baker's claim, finding and concluding as follows:
1. Defendant employed Plaintiff as of August 3, 2007.
2. Plaintiff was admitted to Union Hospital on August 3, 2007 and seen in triage at 10:37 a.m. According to Union Hospital's records, Plaintiff bent over and felt a pop in her lower back approximately 20 minutes prior to admission.
3. The records indicate that Plaintiff reported "I popped another disc. I really did it this time, it hurts and burns the same as before but higher. I can't lift my right leg, and I'm seeing dots. I only bent over, I was not lifting." The records indicate that Plaintiff's medical history is significant for pre-diabetic care, a previous disc herniation at another level of the lumbar spine and chronic back problems.
4. A note dated August 15, 2007 states "She has also had treatment by Dr. Bailey and sometimes has to use a cane for *405 walking. She remained active, even with chronic back pain."
5. A note authored by Tyrone Powell, Ph.D. dated August 30, 2007 states ". . . she was at work at Burger King when she bent over to pick up a hamburger on the floor."
6. Plaintiff filed her Application for Adjustment of Claim on October 15, 2007. On her Application Plaintiff alleged that she was getting food out of a freezer, bent over to open a bun bag to get a bun and felt a terrible pain in her back.
7. On March 6, 2008 Plaintiff filed her Petition for Emergency Hearing to Determine Compensability and Establish Temporary Total Disability and Medical Payments.
8. At [a] hearing on May 12, 2008, Plaintiff testified that she was helping to make a large order of food and that she was attempting to free a plastic bun tray from a metal tray rack when she experienced the onset of severe pain. Plaintiff testified that there was previous damage to the metal rack that caused the plastic bun tray to become stuck in the rack.
9. At [a] hearing on May 12, 2008, Defendant's representative testified that Plaintiff told her over the telephone during her hospital stay and in person that Plaintiff did not wish to complete an accident report for purposes of securing worker's compensation.
10. At [a] hearing on May 12, 2008 Plaintiff testified that she did not have a good recollection of anything that occurred after she felt the onset of pain and that she did not recall speaking with Defendant's representative during her hospitalization. Plaintiff testified that she had experienced a bad reaction to morphine during her hospitalization. Plaintiff's mother testified that Plaintiff experienced hallucinations during her hospital stay and that Plaintiff said things that were out of character.
11. According to the medical records, Plaintiff presented her medical providers with histories at various times on and after August 3, 2007. While the records suggest that Plaintiff did have a reaction to morphine for part of the period of treatment, she also provided histories regarding her condition before and after the period that she was treated with morphine. The statement made most contemporaneously with the injury on August 3, 2007 indicates that Plaintiff simply bent over and felt the onset of pain.
12. Although the parties provided the Board with a large stack of medical records, the parties' exhibits do not contain specific medical reporting or testimony addressing the mechanism of Plaintiff's injury or the issue of causation for purposes of the Worker's Compensation Act.

13. The testimony and exhibits presented at [the] hearing on May 12, 2008 do not establish by a preponderance of the evidence that Plaintiff sustained personal injury by accident arising out of and in the course of her employment as alleged.
Appellant's App. at 8-9 (emphasis added). Baker appealed that decision to the Full Board, which adopted the Single Hearing Judge's decision. This appeal ensued.

DISCUSSION AND DECISION

Standard of Review
We have previously explained the applicable standard of review as follows:
In challenging the Board's decision, [the employee] confronts a strong standard of review. This court is bound by the factual determinations of the Board and may not disturb them unless the evidence is undisputed and leads inescapably *406 to a contrary conclusion. We must disregard all evidence unfavorable to the decision and must consider only the evidence and reasonable inferences therefrom which support the Board's findings. This court neither reweighs the evidence nor judges the witness' credibility, as these are functions of the Board. Whether an injury arises out of and in the course of employment is a question of fact to be determined by the Board. If the Board reaches a legitimate conclusion from the evidential facts, the appellate court cannot disturb that conclusion although it might prefer another conclusion equally legitimate.
Kovatch v. A.M. General 679 N.E.2d 940 (Ind.Ct.App.1997) (citations omitted), trans. denied.
Here, Baker contends that the Board erred when it concluded that she had not submitted evidence sufficient to support an award in her favor. Our Supreme Court has explained an employee's burden of proof as follows:
The Worker's Compensation Act authorizes the payment of compensation to employees for "personal injury or death by accident arising out of and in the course of the employment." Ind.Code § 22-3-2-2(a). An injury "arises out of" employment when a causal nexus exists between the injury sustained and the duties or services performed by the injured employee. Outlaw v. Erbrich Prods. Co., Inc., 742 N.E.2d 526, 530 (Ind.Ct.App.2001); Ind. Mich. Power Co. v. Roush, 706 N.E.2d 1110, 1113 (Ind.Ct.App.1999), trans. denied. An accident occurs "in the course of employment" when it takes place within the period of employment, at a place where the employee may reasonably be, and while the employee is fulfilling the duties of employment or while engaged in doing something incidental thereto. Outlaw, 742 N.E.2d at 530; Tanglewood Trace v. Long, 715 N.E.2d 410, 413 (Ind. Ct.App.1999), trans. denied. Both requirements must be met before compensation is awarded, and neither alone is sufficient. Conway v. Sch. City of East Chicago, 734 N.E.2d 594, 598 (Ind.Ct. App.2000), trans. denied. The person who seeks Worker's Compensation benefits bears the burden of proving both elements. Id.

Milledge v. Oaks, 784 N.E.2d 926, 929 (Ind.2003).
Here, the undisputed evidence supports a determination that Baker's injury occurred "in the course of her employment," since it occurred within the period of employment while she was fulfilling her duties.[2] The dispute arises with regard to the second element, namely, whether the injury "arose out of" her employment. The Board concluded that Baker had not proven a causal nexus between her injury and her duties.
With respect to the causal nexus issue, our Supreme Court has stated that "`[the] nexus is established when a reasonably prudent person considers the injury to be born out of a risk incidental to the employment, or when the facts indicate a connection between the injury and the circumstances under which the employment occurs.'" Milledge, 784 N.E.2d at 929 (quoting Wine-Settergren v. Lamey, 716 N.E.2d 381, 389 (Ind.1999)). Further,
[t]he "risk[s] incidental to employment" fall into three categories: (1) risks distinctly *407 associated with employment, (2) risks personal to the claimant, and (3) risks [] neither distinctly employment nor distinctly personal in character. Risks that fall within categories numbered one and three are generally covered under the Worker's Compensation Act. However risks personal to the claimant, those "caused by a pre-existing illness or condition unrelated to employment," are not compensable.
Id. at 930 (citations omitted).
Here, in concluding that neither party proved the mechanism of Baker's injury, the Board necessarily determined that Heartland had not proven its allegation that Baker's injury was due to a pre-existing condition.[3] Accordingly, her injury cannot be considered a risk personal to her. Cf., Kovatch, 679 N.E.2d at 944 (holding evidence supported Board's conclusion that employee's injury was idiopathic). And risks in the first category, those "distinctly associated with employment," involve risks inherent in certain types of jobs, such as those requiring heavy lifting or working with electricity. The evidence does not suggest that Baker's injury falls into that category.
The third category, namely, risks neither distinctly related to the employment nor distinctly personal, are characterized as "neutral" risks. See id. at 932. And our Supreme Court has held that "the appropriate analytical tool for resolving questions concerning injuries that result from neutral risks" is the positional risk doctrine. Id. Under that doctrine, "if the `in the course of employment' element is met, then there is a rebuttable presumption that the injury `arises out of employment.'" Id. at 931. And the burden is on the employer to demonstrate that the injury was actually the result of a cause personal to the claimant. Id. The Court observed that the positional risk doctrine is "consistent with the underlying purpose of the Worker's Compensation Act: to provide compensation to workers suffering from work-related injuries without meeting the liability requirements of tort law." Id. at 932-33.
Here, Baker presented evidence that leads only to the conclusion that her injury arose "in the course of" her employment, and her injury, a disc herniation with no apparent cause, necessarily falls into the neutral risk category of injuries. See Holland v. Coast Midwest Transport, 789 N.E.2d 512, 515 (Ind.Ct.App.2003) (holding knee injury incurred on the job with no apparent cause was the result of a neutral risk, and employer bore burden to rebut presumption that it arose out of employment)[4]; see also Milledge, 784 N.E.2d at *408 934 (holding injury constituted a neutral risk where employee tripped in employer's parking lot without explanation); Metropolitan School Dist. of Lawrence Twp. v. Carter, 803 N.E.2d 695, 699 (Ind.Ct.App. 2004) (holding "unexplained" fall properly considered a neutral risk under positional risk doctrine). Accordingly, Heartland bore the burden to prove that the risk was not neutral, but was personal to Baker in that it was the result of a pre-existing condition. The Board concluded that neither party had proven the mechanism of Baker's injury. Heartland had the burden to rebut the presumption in Baker's favor, and the Board erred when it concluded that Baker had not sustained her burden of proof.
Baker would not have been at the place where she injured her back but for the duties of her employment. See Milledge, 784 N.E.2d at 934. Heartland did not prove that the injury was the result of an idiopathic cause, a cause personal to her, and it has not, therefore, rebutted the presumption in Baker's favor under the positional risk doctrine. Accordingly, we reverse the Board's decision and remand with instructions to award Baker benefits.[5]
Reversed and remanded with instructions.
KIRSCH, J., and BARNES, J., concur.
NOTES
[1] Baker gave different versions of what she was doing at the time of the injury. She told the emergency room staff that she was bending forward, but not lifting anything. In her Application, she stated that she was opening a bag of buns out of the freezer. And she subsequently testified that she was struggling to free a tray stuck in a metal tray rack. There is no suggestion, however, that Baker was not engaged in the performance of her normal work duties at the time of the injury.
[2] It is of no moment whether Baker was simply bent over, picking something up, or struggling with a tray at the time of her injury. It is undisputed that she was "on the clock" and performing her duties at the time of the injury. The evidence is clear that Baker was either engaged in fulfilling her duties or something incidental thereto.
[3] The issue of whether Baker's injury is related to a pre-existing condition is a complex medical question. Heartland did not present any expert testimony on that issue, and the medical records submitted to the Board do not prove anything other than the fact that Baker had a prior disc herniation and "chronic back problems." Appellant's App. at 91. That evidence, without more, is insufficient to prove that the herniation that occurred on August 3, 2007, was related to a pre-existing condition. And while the evidence showed that Baker fell off of a horse in July 2007, there was no evidence, whatsoever, of any back pain or back injury in the course of that fall. Indeed, Baker's medical records related to the fall off of the horse clearly indicate that she did not report any back pain.
[4] The facts and circumstances of Holland are analogous to those here. In Holland, the employee had a history of knee problems, including a previous anterior cruciate ligament ("ACL") injury, but there was no evidence of a connection between that injury and a subsequent injury to the same ACL the employee sustained at work. At the time of the appeal to this court in Holland, our Supreme Court had just recently decided Milledge, adopting the positional risk doctrine. And we held that, without evidence that the injury was caused by a risk personal to the employee, it was a neutral risk, and the employer had the burden to rebut the presumption that Holland's knee injury arose out of his employment. Because Milledge had only recently been decided, we remanded to the Board for a new hearing, permitting the employer to present evidence on that issue. Here, however, because several years have passed since our Supreme Court enunciated the positional risk doctrine in Milledge, and it is established law, we do not think that remand is appropriate.
[5] Because we reverse, we need not address Baker's contention that the Board abused its discretion when it did not permit her to supplement the record with a deposition of her physician.