**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 03 2013, 5:29 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**SANDRA O'BRIEN**
Hobart, Indiana

ATTORNEY FOR APPELLEE:

**DANIEL M. COOPER**
Merrillville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JOSE GARCIA, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 93A02-1305-EX-437 |
| | ) | |
| G. WM. WALKER CONSTRUCTION, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE INDIANA WORKER'S COMPENSATION BOARD
The Honorable Linda Hamilton, Chairman
Cause No. C-190692

**October 3, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**RILEY, Judge**

## STATEMENT OF THE CASE

Appellant-Claimant, Jose Garcia (Garcia), appeals the Indiana Worker's Compensation Board's (Board) determination that his injury did not arise out of his employment with Appellee-Respondent, G. Wm. Walker Construction (Walker Construction).

We affirm.

## ISSUE

Garcia raises one issue on appeal, which we restate as: Whether the Board erred in its determination that his injury did not arise out of his employment.

## FACTS AND PROCEDURAL HISTORY

In March of 2006, Garcia was employed by Walker Construction and was working at a construction site across from the Munster Landfill. In and around the Munster Landfill, a number of seagulls congregated, depositing a large amount of avian excrement. On March 29, 2006, Garcia was washing out the back of a truck with a hose when the hose slipped from his hand and splashed muddy soil into his face. Two to three days later, Garcia started to experience cold symptoms and had trouble breathing. His symptoms worsened in time, and on April 18, 2006, Garcia went to the emergency room after waking up with "one eye up and one eye down," a severe debilitating headache, fatigue, and confusion. (Appellant's App. p. 52). A spinal tab revealed a cryptococcal fungus infection and he was diagnosed with cryptococcus meningitis. Cryptococcus is a type of fungus found in the soil, typically in association with bird droppings and which

2

can cause cryptococcus meningitis. Garcia remained in hospital care until June 20, 2006. Following his discharge, he received home health care, as well as nursing and physical therapy for several months. In October of 2010, Garcia returned to work, for a different employer.

On January 31, 2008, Garcia filed an Application for Adjustment of Benefits with the Board. On April 19, 2012, the Single Hearing Member of the Board conducted a hearing on Garcia's application. On July 26, 2012, the Single Hearing Member issued his findings of fact and conclusions of law, concluding that Garcia did not meet his burden of proof and therefore his claim was not compensable under the Indiana Workers Compensation Act. He found in pertinent part that:

> 6. During the time [Garcia] was hospitalized and received treatment, no one on his team of treating physicians gave an opinion as to the manner in which [Garcia] contracted meningitis.
>
> 7. [] [T]he Discharge Summary from [his doctor] notes "the unknown cause of the meningitis."
>
> * * *
>
> 12. The first medical report linking the meningitis with [Garcia's] employment with [Walker Construction] was issued by Dr. Fortson over five (5) years after [Garcia] contracted the disease.
>
> 13. Dr. Fortson has experience and expertise in the area of Family Practice and Disability Evaluation.
>
> 14. Dr Fortson's theory on how [Garcia] contracted meningitis contradicts [Garcia's] theory on the method of infection.
>
> 15. Dr. Lee issued an expert opinion on the cause of [Garcia's] meningitis.
>
> 16. Dr. Lee is Board Certified in the fields of Infectious Disease and Internal Medicine.

3

17. Dr. Lee found that none of [Garcia's] employment related exposures were risk factors for meningitis.

18. Dr. Lee specifically found that there have been no reported cases of a person contracting meningitis in the manner claimed by [Garcia].

19. Dr. Lee also found that for [Garcia] to contract meningitis in the manner prescribed by Dr. Fortson would require extended exposure, however [Garcia] testified that he was only on the jobsite for two to three (2-3) days.

20. Dr. Lee ultimately found no causation as there is no evidence that seagulls, or other birds, in the area of [Garcia's] employment were actual carriers of Cryptococcus.

21. Dr Fortson's experience and expertise, as outlined in his curriculum vitae (CV) does not indicate that he is specifically qualified to issue an opinion on the causation of a disease such as meningitis and his opinion is therefore assigned less weight.

22. Dr Lee's experience and expertise, as outlined in her curriculum vitae (CV), show her qualifications to opine as an expert on the causation of meningitis and her opinion is therefore assigned great weight.

23. [Garcia] claims he contracted meningitis through exposure to the fecal matter or seagulls; however, [Garcia] failed to offer any evidence showing any of the following:
   a. That the specific variety/species of seagull native to Northwest Indiana has ever been known to carry meningitis;
   b. That there has ever been a case in Northwest Indiana or the surrounding region of a person contracting meningitis through exposure to seagull feces;
   c. That there were any cases of meningitis in Northwest Indiana or the surrounding region linked to exposure to the feces of any bird in the Spring/Summer of 2006 or any other time; or
   d. That any co-worker on the jobsite or any employee of the nearby landfill (who faced exponentially higher exposure) contracted meningitis, or any other potentially related illness, from any source, known or unknown.

24. [Garcia] in his testimony at the hearing, admitted that seagulls are commonly found throughout Northwest Indiana.

4

25. [Garcia] also testified at hearing and noted in his discovery responses that, during the same time period as the injury/exposure, he routinely did landscaping and lawn care at several rental properties and his own home, all located in and around East Chicago in Northwest Indiana.

26. Even if the Board were to accept [Garcia's] basic premise that he contracted meningitis through some form of exposure to the feces of seagulls or other birds, [Garcia] has failed to prove any of the following:
   a. That he contracted meningitis at work and not from other potential exposures;
   b. That there were increased rates of meningitis around the jobsite; or
   c. That there were any other cases of meningitis in the area surrounding the worksite.

27. Dr. Lee found that [Garcia's] meningitis was most likely caused by an underlying case of sinusitis.

28. Dr Lee's explanation offers the simplest answer that fits all the evidence in the case.

(Appellant's App. pp. 14-16).

Garcia appealed to the Board. On April 29, 2013, after a hearing, the Board issued its opinion, adopting the Single Hearing Member's decision.

Garcia now appeals. Additional facts will be provided as necessary.

DISCUSSION AND DECISION

Garcia contends that the Board erred in its determination that his meningitis did not arise out of his employment. On appeal, we review the decision of the Board, not to reweigh the evidence or judge the credibility of witnesses, but only to determine whether substantial evidence, together with any reasonable inferences that flow from such evidence, support the Board's findings and conclusions. *Bertoch v. NBD Corp.*, 813 N.E.2d 1159, 1160 (Ind. 2004). In so doing, we apply a two-tiered standard of review.

5

*Ag One Co-op v. Scott*, 914 N.E.2d 860, 862 (Ind. Ct. App. 2009). We first review the record to determine whether there is competent evidence of probative value to support the Board's findings, and then determine whether the findings support the decision. *Id*. at 863. As a general matter, we are bound by the Board's findings of fact and may only consider errors in the Board's conclusions of law. *Ind. Mich. Power Co. v. Roush*, 706 N.E.2d 1110, 1113 (Ind. Ct. App. 1999). However, we may disturb the Board's factual determinations if we determine that the evidence is undisputed and leads inescapably to a result contrary to that reached by the Board. *Id*. We review the Board's conclusions of law *de novo*. *Bertoch*, 813 N.E.2d at 1160.

Garcia's sole issue focuses on the Board's evaluation of the presented expert testimony. Specifically, he claims that Dr. Lee's report includes "glaring inconsistencies" and its conclusion is "antithetical to the accepted understanding of how [c]ryptococcus meningitis is transmitted." (Appellant's Br. p. 5). Pointing to the medical articles cited by Dr. Lee in support of her thesis, Garcia painstakingly disseminates their content to reach his conclusion that these articles "certainly do not support her opinion, making her unreliable despite her qualifications." (Appellant's App. p. 9). Instead, Garcia urges us to adopt the findings of Dr. Fortson as "credible evidence that [Garcia] contracted cryptococcal meningitis from exposure to bird droppings at his work place." (Appellant's App. p. 11).

Garcia's argument merely challenges the credibility (and weight thereof) of the respective expert witnesses. Most tellingly, Garcia invites us, based on "the credible evidence," to reverse and remand the Board's order. (Appellant's App. p. 12). However,

it is well established that "[w]here the evidence of expert witnesses is conflicting, it is the Board's prerogative to solve the conflicts." *Roebel v. Dana Corp.*, 638 N.E.2d 1356, 1360 (Ind. Ct. App. 1994). Here, the Board's findings reflect a careful weighing of the expert's conclusions as tailored to the facts before us. The Board understood the differences between the experts and made a careful analysis of their respective positions while mindful of the weaknesses underlying each report. We cannot impinge upon the Board's resolution of these questions.

CONCLUSION

Based on the foregoing, we affirm the Board's conclusion that Garcia's injury did not arise out of his employment.

Affirmed.

KIRSCH, J. and ROBB, C. J. concur